OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Roderick A. Smith, filed June 6, 2006. On January 3, 2006, a Clark County Grand Jury indicted Smith on one count of having weapons while under disability, in violation of R.C. 2923.13, a felony of the third degree, and one count of carrying concealed weapons, in violation of R.C. 2923.12(A)(2), a *Page 2 
felony of the fourth degree. Following a jury trial, Smith was found guilty of both counts, his motion for acquittal following the State's case having been denied. The jury found that Smith had ammunition ready at hand for the weapon. On May 11, 2006, the trial court sentenced Smith to four years on count one and seventeen months on count two, to be served consecutively.
 {¶ 2} The events giving rise to this matter began on August 5, 2005, when Smith, Michael Smallwood and Alandre Gilbreath went to a party in Springfield, Ohio, in a car Smith borrowed from his aunt. Smallwood drove the car to the party, which was located behind a Speedway gas station. Smith, Smallwood, and Gilbreath left the party at approximately 3:00 am, and Smallwood drove the car to Speedway.
 {¶ 3} The same morning, Barbara Jean Harris, head cashier at Speedway for the third shift, called the Springfield Police at about 3:30 am, "because a gentleman was standing outside. He got out of his car with a revolver in his hand, held it up in the sky, walked across the lot, and walked back to his car; and I called the police to report that a gun was on the lot." According to Harris, the man she observed then got into the passenger seat of the car, and the car pulled out of the lot. Harris described the vehicle as a white or light blue station wagon, and she gave the police a partial license plate number. She also indicated to the police the direction in which the car headed from Speedway.
 {¶ 4} A short time later, the police appeared at Speedway with Smith in their cruiser. According to Harris, "they asked me if I would like to look through the window or if I would like to walk out to the car. I told them I had no problem walking out to the car. I walked out to the car, and the gentleman tried to duck under his hands so I couldn't see his face; but I was still *Page 3 
able to, and I said, `Yes, sir, that's him.'" Harris again identified Smith at trial as the person she had seen in the Speedway lot with a gun.
 {¶ 5} Officer Michael Kranz, a member of the uniform patrol of the Springfield Police Department, testified that he was dispatched to the Speedway station as a result of Harris' call. As he was leaving headquarters, he was advised that Sergeant Barcus had located a vehicle matching the description given by Harris, and Kranz responded to her location. Kranz fell in behind Barcus as she initiated a traffic stop of the vehicle. Barcus ordered the driver out of the car, but all three men emerged. Barcus told them to get on the ground, and Smith did not comply. Kranz tackled him and placed him in the back of his cruiser. Kranz was not involved in the search of the car.
 {¶ 6} Jason Byron, another member of the uniform patrol of the Springfield Police Department, testified that he and other officers were separately dispatched to the Speedway gas station based on Harris' call. When Byron arrived, Barcus and Kranz had stopped the car "at the Goodyear Tire lot." Once all three men were secured in the cruisers, Byron searched the passenger compartment of the front passenger seat. He stated that he "glanced under the seat and * * * opened the glove box, and that's where the firearm was."
 {¶ 7} Timothy Shepherd, a forensic criminalist in the Springfield Police Division Crime Laboratory, provided expert testimony that he performed an operability test on the weapon recovered, and that the weapon was operable. Shepherd also testified that he was not asked to perform a fingerprint analysis of the weapon.
 {¶ 8} Smallwood was the sole witness for the defense. He testified that the party they attended was an open invitation going-away party for "Little Man," who was going to prison. He *Page 4 
testified that he locked the glove compartment of the car earlier in the day at the request of the owner of the car. According to Smallwood, he, Smith and Gilbreath, while at the party, observed a man walking backwards waving a gun in the Speedway parking lot while another man in the lot was "kind of throwing words at him." Smallwood stated that he, Smith and Gilbreath then went to the Speedway to buy cigarettes. Smallwood stated he never saw Smith or Gilbreath with a gun.
 {¶ 9} Smith asserts three assignments of error. His first assignment of error is as follows:
 {¶ 10} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AS TO THE CHARGE OF CARRYING A CONCEALED WEAPON BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION."
 {¶ 11} Crim.R. 29(A) provides that the "court on motion of a defendant * * * after the evidence on either side is closed, shall order the entry of a judgement of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. (Internal citations omitted). When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. (Internal citations omitted). A guilty verdict will not be disturbed on appeal unless `reasonable minds could not reach the conclusion reached by the trier of fact.'" State v.Drane, Montgomery App. No. 21626, 2007-Ohio-2591. *Page 5 
 {¶ 12} To convict a defendant of a charge of carrying concealed weapons, the State must establish that the defendant knowingly carried or had a handgun, concealed on his person or concealed ready at hand, which was loaded or for which the offender had ammunition ready at hand. R.C. 2923.12.
 {¶ 13} The State relied on Harris, Kranz, Byron, and Shepherd to establish the above elements. We agree with Smith that the record is devoid of any testimony regarding whether the weapon was loaded or whether Smith had ammunition ready at hand. Harris testified that she saw Smith in the parking lot with the gun, but she did not indicate that the gun was loaded or that she observed any ammunition ready at hand. While Kranz was aware that a gun had been recovered, he did not testify regarding whether it was loaded or whether any ammunition was recovered. Byron testified that he located the gun in the glove box, and he identified the gun at trial, but he did not testify that it was loaded or that any ammunition was recovered. Finally, Shepherd testified to firing the weapon, but he did not testify that the gun was loaded when he received it or that any ammunition was submitted along with the gun. The record is devoid of any evidence regarding ammunition for the gun.
 {¶ 14} Attached to the State's brief is a photo marked State's Exhibit 2, which includes an image of a handgun, a clip, and four bullets. The State argues, "Contrary to appellant's argument in its brief, there was ample evidence to support the jury's finding that there was ammunition with the handgun in this case because state's exhibit 2 was that handgun and the ammunition. This Honorable Court need only look at state's exhibit 2 to answer this assignment of error and hold that there was sufficient evidence to support the jury's verdict of guilty of carrying a concealed weapon with ammunition readily at hand." *Page 6 
 {¶ 15} However, during their deliberations, the jury asked the court in writing, "Gun loaded in the glove box?" The court responded on the record, "Again, I was unable to find any direct testimony regarding that. So as to these questions that I do not now have any direct testimony for, I can't interpret what testimony is there for you. That is the job of the fact finder. You will simply have to review, as your collective memory allows, the testimony you heard that may, in your minds, be relevant to these questions and review all of the instructions within those regarding circumstantial evidence."
 {¶ 16} A second juror submitted the following question to the court: "Are all items in an evidence bag found as one piece. Are individual items bagged separately." The trial court did not respond to this question on the record, although at the bottom of the paper on which the question is written there is a notation, "There is no direct testimony regarding these questions. Judge O'Neill."
 {¶ 17} The second juror question suggests that the jury observed the ammunition and clip which are depicted in State's Exhibit 2, but the State failed to adduce any evidence that the gun recovered was either loaded or that ammunition was ready at hand during its case in chief. It is wholly insufficient to suggest that because a clip and ammunition appear in the photo, the recovered gun must therefore have been loaded or the ammunition was located close at hand. The State did not elicit any such testimony from any officer, including the officer who authenticated the photo of the gun itself.
 {¶ 18} Since the State failed to establish an element of carrying concealed weapons, namely that the gun was loaded or that Smith had ammunition ready at hand, the evidence is insufficient as a matter of law and the court erred in denying Smith's motion for judgment of *Page 7 
acquittal on count two. Smith's first assignment of error is sustained.
 {¶ 19} Smith's second assignment of error is as follows:
 {¶ 20} "THE PROSECUTOR MADE IMPROPER REMARKS DURING CLOSING ARGUMENT THAT PREJUDICED APPELLANT AND AMOUNTED TO PROSECUTORIAL MISCONDUCT."
 {¶ 21} While we need not address the merits of this assignment of error as it relates to the carrying concealed weapons charge, given our resolution of Smith's first assignment of error, we do so in the interest of a complete analysis of this matter.
 {¶ 22} "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. (Citations omitted). A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. (Citation omitted). The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. (Citation omitted).
 {¶ 23} "It is not prosecutorial misconduct to characterize a witness as a liar or a claim as a lie if the evidence reasonably supports the characterization. (Internal citations omitted). However, prosecutors may not invade the realm of the jury by, for example, stating their personal beliefs regarding guilt and credibility, or alluding to matters outside the record." (Internal citation omitted). State v. Baker, Greene App. No. 2004 CA 29, 2005-Ohio-45.
 {¶ 24} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. (Citations omitted). To begin with, the prosecution must avoid insinuations and *Page 8 
assertions which are calculated to mislead the jury. (Citation omitted). It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. (Citations omitted). Moreover, the code [of Professional Responsibility] provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1)." State v. Smith, 14 Ohio St.3d 13, 470 N.E.2d 883.
 {¶ 25} "`The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.' (Citations omitted). When an appellate court reviews allegations of prosecutorial misconduct, it reviews the alleged misconduct in the context of the entire trial. (Citation omitted). A defendant's conviction will not be reversed when it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even absent the prosecutor's comments. Furthermore, failure to object to the alleged wrongful conduct waives all but plain error for the purposes of appellate review. (Citation omitted). In order to find plain error, the reviewing court must find that `but for the error, the outcome of the trial clearly would have been otherwise.'"State v. Gay, Montgomery App. No. 21581, 2007-Ohio-2420.
 {¶ 26} Despite the lack of evidence in the record, the prosecutor herein argued in his closing argument that the gun at issue was loaded as follows: "It's carrying a concealed weapon if you have, carry, concealed on your person, or concealed ready at hand — it doesn't necessarily have to be on you, as long as it's within close proximity to you — a handgun that was loaded or where ammunition was readily available. This is within arm's reach of Mr. Smith at the time that he's taken into custody. It's a loaded firearm. It's also carrying a concealed weapon." Smith did not object to these remarks.
 {¶ 27} The prosecutor's remark that the gun was loaded was not supported by the *Page 9 
evidence adduced, either direct or circumstantial. In other words, the prosecutor's remarks went beyond the evidence before the jury. In the context of the entire trial, the jury heard no evidence regarding any ammunition in or near the gun. It is unclear whether the jury would have found Smith guilty of carrying concealed weapons beyond a reasonable doubt absent the prosecutor's remark, given the absence of evidence going to this element of the offense. Even though the jury ultimately determined that ammunition was ready at hand, and not that the weapon was loaded, we conclude that the prosecutor's remark that the gun was in fact loaded was not supported by the facts adduced by the State of Ohio and was indeed improper.
 {¶ 28} Smith next argues that the "prosecutor erroneously quoted the testimony of Harris by stating that the suspect with the gun was wearing a red shirt," when in fact Harris stated, "I think I was able to tell them what he was wearing at the time, but I don't remember now." Smith did not object to the prosecutor's closing remark about the red shirt. Kranz testified, over objection, that the suspect was described as wearing red shirt, and the court informed the jury that the testimony was not allowed in for the truth of the matter asserted, i.e. that Smith wore a red shirt, but rather "as to why the officers did what they did following being given that information."
 {¶ 29} According to Smith, "the prosecutor circumvented the Judge's instruction when he remarked on the statement to the jury during his closing argument." While the prosecutor mischaracterized Harris' description of Smith's attire, the court had already informed the jury that the alleged fact that Smith was wearing a red shirt was not a fact in evidence. We see no plain error.
 {¶ 30} Finally, Smith argues that the State's reference to the sole witness for the defense *Page 10 
as a liar constitutes prosecutorial misconduct. During closing argument the prosecutor stated, "And so what you have to do is ultimately determine the credibility of these witnesses; and I will submit that the credibility of Barbara Harris, Officer Kranz, Officer Byron, and Timothy Shepherd doesn't even compare to the dribble that you heard from Michael Smallwood. You have to determine who to believe and who not to believe. And this isn't even a close call when it comes to trying to believe anything that Michael Smallwood tells you.
 {¶ 31} "We know from Michael Smallwood that he and his friend — there's a cue right there. He and his friend go to a going-away party of Little Man; and we find out that his going-away party is because Little Man's going to prison and, work on the street, they end up at this party at a place that is a rental hall for parties. And most of you have been to some kind of place like that for wedding receptions and graduations, anniversary parties, retirements. Have you ever gone to somebody's going-away party `cause they're off to prison? Kind of gives you a little insight into Michael Smallwood to begin with.
 {¶ 32} "Now, he tells you that notwithstanding the fact that he watched the guy run to the Speedway with a gun, he and his buddies followed shortly thereafter; but they don't have a gun themselves; but they go down to a place where a guy who just got into a fight with a gun and they're gonna follow him down there. Does that make the least bit of sense to anybody here? I submit to you it doesn't.
 {¶ 33} "He waffles about whether somebody in his party has a gun and, eventually, they tell you they don't. We know that he's a convicted felon, and you'll get an instruction as to how to use that determination to determine his credibility. Can you trust him or not. I don't think you would probably buy a paper off of Michael Smallwood, let alone trust him with anything *Page 11 
more significant than that.
 {¶ 34} "* * *
 {¶ 35} "Michael Smallwood wasn't the front seat passenger, he was the driver. This other guy, the Gilbreath, he wasn't the front seat passenger. He was directly behind the driver. There's only one guy that was the front seat passenger. Michael even tells you that much. I guess that's one thing that you can believe from him.
 {¶ 36} "Whenever people have to come in and start telling you things that happened months ago, I think it's very natural to find some minor discrepancies. One person remembers something slightly different a little bit. Doesn't mean that they're not necessarily telling the truth. I think you would expect a little bit of inconsistency. Michael Smallwood is not anything anywhere near inconsistency, he's just a liar. Whatever tiny little discrepancies that the officers and Barbara Harris have is minuscule compared to him."
 {¶ 37} We agree with Smith that the prosecutor's remarks went beyond the normal latitude allowed in closing argument and were improper in that he expressed his own opinion as to Smallwood's credibility, thereby invading the realm of the jury. We must next determine whether the remarks prejudicially affected Smith's substantial rights. Given the overwhelming evidence before the jury that Smith knowingly acquired, had [or] carried a firearm (R.C. 2923.13), it is clear beyond a reasonable doubt that, absent the prosecutor's comment regarding lying, the jury would have found Smith guilty of having weapons while under disability. In other words, Smith's substantial rights were not affected.
 {¶ 38} As discussed above, the portion of this assignment of error relating to the establishment of the elements of carrying a concealed weapon is moot. The assignment of error *Page 12 
is overruled as to the prosecutor's remark that Smith wore a red shirt and that Smallwood lied.
 {¶ 39} Smith's third assignment of error is as follows:
 {¶ 40} "APPELLANT WAS DENIED A FAIR TRIAL IN THAT THE TRIAL COURT REFUSED TO COMPEL TESTIMONY FROM A DEFENSE WITNESS WHO HAD INVOKED HIS FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION."
 {¶ 41} Smith argues that the "right to decline answers to specific questions applies only when the danger of self-incrimination is real and appreciable, rather than imaginary and insubstantial," citing Rogers v.United States (1951), 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 ("Since the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure, petitioner cannot invoke the privilege where response to the specific question in issue * * * would not further incriminate her. Disclosure of a fact waives the privilege as to details.")
 {¶ 42} Early in his testimony, Smallwood stated that, other than he, Smith and Gilbreath, there were several people at the party with firearms, "people flashing them around."
 {¶ 43} Later, the following colloquy occurred between Smallwood and counsel for Smith:
 {¶ 44} "Q. Did you see my client with a gun when you were at the party?
 {¶ 45} "A. No.
 {¶ 46} "Q. Did you see my client with a gun at Speedway?
 {¶ 47} "A. No.
 {¶ 48} "Q. Did you see the other passenger with a gun?
 {¶ 49} "A. Take the fifth on that one. *Page 13 
 {¶ 50} "THE COURT: Excuse me, sir. You can't."
 {¶ 51} A conference was then held at the bench between Court and counsel, and then the questioning continued as follows:
 {¶ 52} "Q. You testified — I'm just a little thrown here. You testified that you saw other people at the party with guns, right?
 {¶ 53} "A. Yes.
 {¶ 54} "Q. Did you see either my client or the other passenger with a gun at all?
 {¶ 55} "A. No."
 {¶ 56} Since Smallwood ultimately answered defense counsel's question, there was no need for any further Fifth Amendment analysis by the trial court. We find no merit to Smith's third assignment of error, and it is overruled.
 {¶ 57} Smith's first assignment of error having been sustained, his conviction and sentence for the charge of carrying concealed weapons is vacated; Smith's second and third assignments of error having been overruled, his conviction for having weapons while under disability is affirmed.
 WOLFF, P.J. and FAIN, J., concur. *Page 1