THE STATE OF OHIO, APPELLANT, *v.* DAVIS, APPELLEE.

[Cite as *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706.]

*Evidence — Spousal testimony — Plain-error analysis required before reversing a conviction for Evid.R. 601(B) violation — Judgment reversed and cause remanded.*

(No. 2009-2208 — Submitted September 28, 2010 — Decided November 30, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 91324, 2009-Ohio-5217.

_____

SYLLABUS OF THE COURT

An appellate court may not reverse a conviction for plain error based on the admission of spousal testimony in violation of Evid.R. 601(B) unless it conducts a plain-error analysis pursuant to *State v. Adamson* (1995), 72 Ohio St.3d 431, 650 N.E.2d 875, and determines that but for the error in admitting the spouse's testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice.

_____

O'DONNELL, J.

{¶ 1}   The state appeals from a judgment of the Eighth District Court of Appeals that reversed multiple rape and gross sexual imposition convictions of William N. Davis. The appellate court held that the trial court had erred in admitting testimony from Davis's spouse in violation of Evid.R. 601(B) because it did not inform her that she could choose not to testify against her husband and

did not determine that she had elected to testify. *State v. Davis*, Cuyahoga App. No. 91324, 2009-Ohio-5217, ¶ 29-30.

{¶ 2} In its memorandum in support of jurisdiction and in its appellate brief, the state represents that the court of appeals has now recognized a new form of structural error that is contrary to controlling precedent of this court. It further asserts that the appellate court changed the standard for plain-error review when it reversed Davis's convictions without expressly stating in its opinion that the spousal testimony had affected the outcome of the trial. An examination of the court of appeals opinion reveals that it did not rely on, or even mention, the structural-error doctrine in its decision, nor did it change the law regarding plain error. Rather, the appellate court, relying on our decision in *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, formulated a conclusory statement that the trial court had committed reversible plain error, but it never actually performed a plain-error analysis in its opinion. We accepted discretionary jurisdiction over the cause. *State v. Davis*, 124 Ohio St.3d 1492, 2010-Ohio-670, 922 N.E.2d 227.

{¶ 3} An appellate court may not reverse a conviction for plain error based on the admission of spousal testimony in violation of Evid.R. 601(B) unless it conducts a plain-error analysis pursuant to *State v. Adamson* (1995), 72 Ohio St.3d 431, 650 N.E.2d 875, and determines that but for the error in admitting the spouse's testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice.

{¶ 4} Because the court of appeals did not perform a plain-error analysis in this case, we reverse its judgment and remand for the court's determination of whether the outcome of the trial would have been different but for the error in admitting the spousal testimony and whether reversal is necessary to prevent a manifest miscarriage of justice.

**Facts and Procedural History**

{¶ 5} Based on the trial testimony of D.T.1 and D.T.2, the record reveals that in 1999, William N. Davis began to sexually abuse D.T.1, the nine-year-old niece of his wife, Alberta Davis, by fondling her. On another occasion, Davis digitally penetrated her vagina. After that incident, D.T.1.'s mother, Deshawn Treadwell, noticed blood on the child's underwear, but assumed that D.T.1 had begun menstruating. At that time, D.T.1 did not reveal the abuse.

{¶ 6} When she was 10 or 11 years old, D.T.1 visited her aunt Alberta to help her with work around the house and with shopping. While Alberta was occupied in the kitchen, Davis engaged in sexual intercourse with D.T.1 in the bedroom. On more occasions over the next several years, he raped and sexually abused D.T.1 when she visited her aunt, with the most recent rape occurring in 2005 when D.T.1 was 15 years old. Around the time that Davis ended the sexual abuse of D.T.1, however, he fondled D.T.1's younger sister, D.T.2, on two separate occasions.

{¶ 7} In September 2006, D.T.1 told her mother that Davis had raped her. Treadwell then contacted the police, and the ensuing investigation resulted in a 31-count indictment against Davis for rape and gross sexual imposition.

{¶ 8} After the jury had been impaneled, a juror disclosed that she had been the victim of domestic violence and could not serve on the jury. Dismissal of this juror resulted in a panel of 11 jurors. Although both the state and Davis agreed to proceed with only 11 jurors, the trial court discharged the jury and continued the trial to a later date.

{¶ 9} At trial the next month, the state subpoenaed Alberta to testify against her husband in its case-in-chief. Davis did not object to his wife's testimony, and the trial court, contrary to Evid.R. 601(B)(2), neither informed her that she could choose not to testify against her husband nor found that she had voluntarily elected to testify.

{¶ 10} During direct examination, Alberta revealed that she and her husband had decided to move to Columbus after the allegations of sexual abuse surfaced, and she admitted that Davis had left a job in Cleveland without having a job in Columbus.

{¶ 11} In addition, the prosecutor asked Alberta whether she had intended to speak with her younger niece, D.T.2, about these allegations. When she denied wanting to talk to D.T.2, the prosecutor asked her to affirm that she would not lie to the jury. At that point, the prosecutor played a recorded telephone conversation between Alberta and her husband during which she agreed to record a conversation with D.T.2. The state characterized this effort as part of a plan to discredit the victim and exonerate Davis. When Alberta testified that she had wanted to tape D.T.2 only to help her (Alberta) to remember the conversation, the state moved to treat her as a hostile witness, asserting that she had schemed with Davis to record conversations with the victim in order to undermine the child's testimony.

{¶ 12} The state then elicited admissions that she had lied to the jury about not wanting to speak to D.T.2 and that she had told Davis that they could move someplace where he could avoid being around children. She also admitted that Davis had suggested "getting someone to whip [D.T.1.'s] ass."

{¶ 13} When the state rested its case, the court dismissed eight counts of the indictment. Defense counsel did not recall Alberta to testify, and Davis chose not to testify.

{¶ 14} The jury returned verdicts of guilt on all counts, and the trial court journalized convictions for six counts of rape in violation of R.C. 2907.02(A)(1)(b), 13 counts of rape in violation of R.C. 2907.02(A)(2), one count of gross sexual imposition in violation of R.C. 2907.05(A)(1), and three counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), sentencing Davis to life in prison and a $415,000 fine.

{¶ 15} Davis appealed to the Eighth District Court of Appeals, arguing that discharging the first jury and impaneling a second jury put him twice in jeopardy for the same offense. The appellate court rejected this argument, holding that the trial court had acted within its discretion in declaring a mistrial. *Davis*, 2009-Ohio-5217, ¶ 25-26. However, the court raised sua sponte the issue of Alberta Davis's competency to testify against her husband, explaining that pursuant to Evid.R. 601(B), a person is incompetent to testify against her spouse unless, inter alia, she elects to testify. Id. at ¶ 28. Relying on *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, and *State v. Adamson* (1995), 72 Ohio St.3d 431, 650 N.E.2d 875, the appellate court stated that the failure of a trial court to instruct a spouse on competency and to make a finding on the record that the spouse voluntarily chose to testify constitutes reversible plain error. *Davis*, 2009-Ohio-5217, ¶ 28. Because the trial court failed to give an appropriate instruction or to make the requisite finding of fact, the appellate court considered itself "compelled to remand this case for a new trial, given the mandates in *Brown* and *Adamson*." Id. at ¶ 30.

{¶ 16} The state now appeals to this court, contending that the appellate court treated the trial court error as requiring automatic reversal and urging: "Where no objection is made to spousal testimony, a court's failure to inform the spouse of competency under Evid.R. 601 is not structural error requiring reversal but may be noticed as plain error." Although the state concedes that the trial court erred because it "did not determine whether Mrs. Davis was competent to testify under Evid.R. 601(B)," it argues that the court of appeals should not have reversed Davis's convictions and remanded for a new trial without first determining "that, but for the error, the outcome at trial would be different."

{¶ 17} Davis does not dispute that a violation of Evid.R. 601(B) is reviewable only for plain error when the accused has not objected to the testimony of a spouse at trial. He frames the main issue in this case as whether a

court of appeals, in conducting a plain-error analysis, is required to expressly state that but for the error, the outcome at trial would have been different. He maintains that the court of appeals applied a plain-error analysis and that it reached the correct result because the spousal testimony prejudiced his defense. In particular, Davis notes that his wife had been caught lying to the jury and testified that she would move with her husband where he could avoid being around children, suggesting her belief in his guilt.

{¶ 18} Thus, we are concerned with the proper method for reviewing the admission of spousal testimony in violation of Evid.R. 601(B) when the accused fails to object: whether it is structural error requiring reversal without a showing of prejudice to the accused, or whether it is plain error subject to a determination that but for the error, the outcome of the trial would have been different.

### Competency of Spousal Testimony

{¶ 19} Evid.R. 601 provides: "Every person is competent to be a witness except * * * (B) A spouse testifying against the other spouse charged with a crime except when either of the following applies: (1) a crime against the testifying spouse or a child of either spouse is charged; (2) the testifying spouse elects to testify."

{¶ 20} Construing this rule in *Brown*, we explained that " 'a spouse remains incompetent to testify until she makes a deliberate choice to testify, with knowledge of her right to refuse. The trial judge must take an active role in determining competency, and must make an affirmative determination on the record that the spouse has elected to testify.' " Id., 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, at ¶ 54, quoting *Adamson*, 72 Ohio St.3d 431, 650 N.E.2d 875, syllabus. In *Brown*, we recognized that the failure of the trial court to instruct the witness on spousal competency and to make a finding on the record that the spouse voluntarily chose to testify "constitutes reversible plain error." Id. at ¶ 60.

**{¶ 21}** Admittedly, our statement in *Brown* that a violation of Evid.R. 601(B) "constitutes reversible plain error" may have been misunderstood to mean that the admission of incompetent spousal testimony is structural error requiring automatic reversal without consideration of whether the testimony prejudiced the accused.

**{¶ 22}** We discussed the structural-error doctrine in *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, explaining that certain constitutional errors " ' "defy analysis by 'harmless error' standards" because they "affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself." ' " Id. at ¶ 17, quoting *State v. Fisher,* 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 10, quoting *Arizona v. Fulminante* (1991), 499 U.S. 279, 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Because structural error permeates " '[t]he entire conduct of the trial from beginning to end' so that the trial cannot ' "reliably serve its function as a vehicle for determination of guilt or innocence," ' " it is deemed prejudicial per se and requires an automatic reversal. *Perry* at ¶ 17, quoting *Fulminante*, 499 U.S. at 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302, quoting *Rose v. Clark* (1986), 478 U.S. 570, 577-578, 106 S.Ct. 3101, 92 L.Ed.2d 460. However, courts recognize structural error "only in a ' "very limited class of cases." ' " *Perry* at ¶ 18, quoting *Neder v. United States* (1999), 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35, quoting *Johnson v. United States* (1997), 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718.

**{¶ 23}** A trial court's error in failing to comply with Evid.R. 601(B) neither necessarily permeates the entire trial nor prevents the trial from reliably serving its function as a vehicle for determining guilt or innocence. To the contrary, Evid.R. 601(B) excludes evidence that is relevant to the ascertainment of truth. Notably, the testimony of the spouse of the accused is not deemed incompetent because of its inherent unreliability, but rather to uphold "the policy

of protecting the marital relationship from 'dissension' and the 'natural repugnance' for convicting a defendant upon the testimony of his or her 'intimate life partner.' " Giannelli & Snyder, Evidence (2d Ed.2001) 387, Section 601.8, quoting 8 Wigmore, Evidence (McNaughton Rev.1961) 216-217, Section 2228. A violation of Evid.R. 601(B) therefore is not structural error requiring automatic reversal.

{¶ 24} Thus, in *Adamson*, we applied a plain-error analysis in reviewing the trial court's failure to determine the competency of the accused's spouse to testify against him when that error had not been brought to the attention of the trial court in the first instance. We stated: "[A]lthough Adamson's counsel failed to object to the error at trial, the error rises to the level of reversible plain error. Pursuant to the terms of Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. 'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. 'Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.' *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899." *Adamson*, 72 Ohio St.3d at 434-435, 650 N.E.2d 875.

{¶ 25} We did not overrule or limit *Adamson* in *Brown.* Rather, the issue in *Brown* involved defense counsel's failure to request a determination that the accused and a witness of the state were in fact married. Thus, we did not apply a plain-error analysis, because the error, if any, rested with defense counsel, not the trial court. Holding that Brown received ineffective assistance of counsel, however, we concluded that "[he] was *prejudiced* by trial counsel's failure to properly raise the issue of Wright's competence to testify." (Emphasis added.) *Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, at ¶ 64.

**{¶ 26}** We therefore clarify our statement in *Brown* that a violation of Evid.R. 601(B) "constitutes reversible plain error." Id. at ¶ 60. An appellate court may not reverse a conviction for plain error based on the admission of spousal testimony in violation of Evid.R. 601(B) unless it conducts a plain-error analysis pursuant to *Adamson*, 72 Ohio St.3d 431, 650 N.E.2d 875, and determines that but for the error in admitting the spouse's testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice.

**{¶ 27}** Here, Alberta Davis appeared in response to a subpoena issued by the prosecutor and testified in the state's case-in-chief. As we explained in *Adamson*, "[j]ust because a spouse responds to a subpoena and appears on the witness stand does not mean that she has elected to testify." *Adamson*, 72 Ohio St.3d at 434, 650 N.E.2d 875. Because the record does not show that the trial court informed her that she could choose not to testify against her husband or that it found that she had voluntarily elected to testify, the court committed a plain or obvious error in admitting her testimony. See id. (it is "clearly error" to order a spouse to testify against the accused).

**{¶ 28}** However, the court of appeals did not complete a plain-error analysis in this case, because it did not determine whether, but for the trial court error in admitting spousal testimony, the outcome of the trial would have been different, and it did not decide that reversal is necessary to prevent a manifest miscarriage of justice.

**{¶ 29}** Our decisions in *Brown* and *Adamson* do not require a reversal for plain error in all instances in which a trial court, without objection, admits spousal testimony in violation of Evid.R. 601(B). Rather, before noticing plain error and reversing a conviction, appellate courts should conduct a plain-error analysis and determine that but for the error in admitting spousal testimony, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest

miscarriage of justice.  Because the court of appeals did not conduct a plain-error analysis before reversing Davis's convictions, its judgment is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and T. Allan Regas and Brent C. Kirvel, Assistant Prosecuting Attorneys, for appellant.

Timothy Young, Ohio Public Defender, and Katherine A. Szudy, Assistant Public Defender, for appellee.

_____