[Cite as *State v. Martin*, 2016-Ohio-922.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   102783

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DANTE D. MARTIN

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-587822-C

**BEFORE:**   Boyle, J., Jones, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   March 10, 2016

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
BY: Brooke M. Burns
Assistant Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio   43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Brian D. Kraft
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Dante D. Martin, appeals his Tier III sex offender classification. He raises three assignments of error for our review:

1. The Cuyahoga County Court of Common Pleas erred when it classified Dante D. Martin as a Tier III sex offender registrant, as defined in R.C. 2950.0l(G)(1), because the application of the adult registration requirements of R.C. Chapter 2950 to juvenile offenders creates an unconstitutional irrebuttable presumption in violation of the Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution and Article I, Section 2 of the Ohio Constitution.

2. The Cuyahoga County Court of Common Pleas erred when it classified Dante D. Martin as a Tier III sex offender registrant, as defined in R.C. 2950.01(G)(1), because the application of the adult registration requirements of R.C. Chapter 2950 to juvenile offenders constitutes cruel and unusual punishments under the Eighth Amendment to the U.S. Constitution and Article I, Section 9 of the Ohio Constitution.

3. Dante D. Martin was denied the effective assistance of counsel when trial counsel failed to object to the imposition of an adult classification on a juvenile offender. Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution; Ohio Constitution, Article I, Sections 9 and 10.

{¶2} Finding no merit to his arguments, we affirm the judgment of the trial court.

## I. Procedural History and Factual Background

{¶3} In June 2014, just after midnight, Martin and two male codefendants were walking around, searching for people to rob. All three males had handguns. Martin and his codefendants approached two victims, a male and a female, in a K-Mart parking lot. Martin placed his gun in the male victim's side. Martin and one of the

codefendants then proceeded to rob the male victim at gunpoint. The other codefendant robbed the female victim at gunpoint, and then told her to walk to the side of K-Mart. The male victim got away at that point. Martin and his two codefendants made the female victim give two of the males oral sex at the same time, alternating between the two (with Martin being one of them), while the third male vaginally raped the female. The female victim said that all three codefendants had their guns out the entire time. At some point, the police arrived. One of the codefendants got away, but Martin and another codefendant were arrested at the scene. Martin's DNA was found in the female victim's mouth.

{¶4} An eight-count complaint was filed against Martin in juvenile court; Martin was 16 years old at the time. The complaint alleged that Martin was delinquent of two counts of aggravated robbery, two counts of kidnapping, and two counts of rape, all first-degree felonies if committed by an adult. Each count also carried one- and three-year firearm specifications.

{¶5} The state filed a mandatory bindover motion pursuant to Juv.R. 30 and R.C. 2152.12. The juvenile court held a hearing and found probable cause that Martin committed the offenses. The juvenile court then transferred Martin's case to the adult court.

{¶6} The Cuyahoga County Grand Jury indicted Martin on nine counts, including four counts of rape, two counts of aggravated robbery, and three counts of kidnapping. Each count carried one- and three-year firearm specifications, as well as a

forfeiture specification. One of the kidnapping counts also carried a sexual motivation specification.

{¶7} In January 2015, Martin pleaded guilty to an amended indictment of one count of rape in violation of R.C. 2907.02(A)(2), a first-degree felony, with the forfeiture specification; one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, with a one-year firearm specification and a forfeiture specification, and one count of kidnapping in violation of R.C. 2905.01(A)(4), a first-degree felony, with the sexual motivation and forfeiture specifications. The remaining counts were nolled. As part of his plea agreement, Martin agreed to testify against his other two codefendants.

{¶8} At sentencing, the parties stipulated that the three counts were allied offenses of similar import. The state elected to proceed on the aggravated robbery count. The trial court sentenced Martin to a total of seven years in prison — one year for the firearm specification to be served consecutive to and prior to six years on the base count of aggravated robbery. The trial court further notified Martin that he would be subject to five years of mandatory postrelease control upon his release from prison and be classified as a Tier III sex offender. It is from this judgment that Martin now appeals.

## II. Constitutional Arguments

{¶9} In his first assignment of error, Martin argues that applying "Ohio's adult registration and notification scheme to [him, as a juvenile,] created an unconstitutional

irrebuttable presumption because it declared that he is just as culpable as an adult who committed the same offense, when this is not universally true of [him] or universally true of other juvenile offenders." Martin maintains that this irrebuttable presumption violated his due process rights under the United States and Ohio Constitutions.

{¶10} In his second assignment of error, Martin contends that automatically classifying him — a juvenile — as a Tier III sex offender and applying the lifetime adult registration and notifications requirements to him is unconstitutional because it amounts to cruel and unusual punishment. His arguments center around the fact that had he been "adjudicated delinquent of R.C. 2907.02(A)(2) [rape] in juvenile court, he would not be subject to an automatic, mandatory, lifetime registration." He asserts that "[t]here is a growing consensus against subjecting children to adult treatment, which is rooted in the long-held belief that 'society's duty to the child [cannot] be confined by the concept of justice alone.'" *In re Gault*, 387 U.S. 1, 16, 97 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (as quoted by Martin).

{¶11} In our discretion, we will address Martin's constitutional arguments together because his claims are rooted in the same reasoning, i.e., that because he was a juvenile at the time he committed the crimes, he should not have been subject to the automatic classification and lifetime registration and notification requirements of an adult Tier III sex offender.

{¶12} Martin acknowledges that he failed to object to his Tier III classification, or raise his constitutional challenges to the trial court. The Ohio Supreme Court has

explained that "the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court." *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986). It is a well-established rule that "'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" *Id.* at 122, quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus.

{¶13} Nonetheless, this court has discretion to consider a forfeited constitutional challenge to a statute under the plain error standard. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 377-378. To do so, Martin must show that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice. *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. Martin argues that "the outcome would have been different" had he objected because it "would have given the juvenile court the opportunity to consider the constitutionality of R.C. Chapter 2950 as applied to [him], a juvenile offender." We will assume that Martin meant that had he objected, it would have given the trial court (not the juvenile court) the opportunity to consider the constitutionality of R.C. Chapter 2950 as applied to him, since Martin was convicted and sentenced in adult criminal court.

{¶14} Considering Martin's argument, he has not shown that the outcome would have been different had he objected. Just because his objection would have given the trial court the *opportunity to consider* the constitutionality of R.C. Chapter 2950, does not mean that the trial court would have found the statute unconstitutional as applied to him. And even if he had objected, it is our view that the trial court would not have found R.C. Chapter 2950 unconstitutional as applied to Martin.

{¶15} For adult sexual offenders under R.C. Chapter 2950 (as enacted by S.B. 10, the Adam Walsh Act), trial courts have no discretion in labeling the offender. A sex offender's classification is automatically determined by the offense. R.C. 2950.01(E)-(G). The duration of the offender's obligation to update his or her personal information for the registry, as well as the frequency of that duty, depends upon his or her tier classification. R.C. 2950.04 through R.C. 2950.07. For adults classified as Tier III sex offenders, they must register quarterly for the remainder of their lives. R.C. 2950.06(B)(3); R.C. 2950.07(B)(1).

{¶16} For juveniles, however, adjudicated delinquent of a sex offense through a traditional juvenile disposition and who are age 14 or older at the time of their delinquent act, an assignment to a tier classification is not automatic. Instead, if the juvenile court finds that the child is a juvenile offender registrant under R.C. 2152.82(A), the court holds a hearing to determine the juvenile offender registrant's tier classification. R.C. 2152.82(B). (Juveniles under 14 are not subject to registration requirements, regardless of the offense.) Which tier such juvenile offender is placed rests within the juvenile

court's discretion. *Id.* If the court finds that the juvenile offender registrant is a Tier III sex offender, then the court may impose certain notification requirements contained in R.C. 2950.10 and 2950.11, but it is not automatic. R.C. 2152.82(B).

{¶17} Martin contends that because he was a juvenile, the presumption that applies to adults who commit sexually oriented offenses, i.e., that they pose a high risk of reoffending and therefore the public must be protected, does not automatically or universally apply to him or other juvenile offenders. He argues that there are "reasonable alternative means" under R.C. 2152.82 through 2152.85, which are applied to juvenile sex offenders in juvenile court, that should also be applied to him. Martin further contends that applying the adult sex offender laws to him constitutes cruel and unusual punishment.

{¶18} The problem with Martin's arguments is that he was not *in juvenile court*. The General Assembly has mandated that after a complaint has been filed in juvenile court alleging that a juvenile is a delinquent child by reason of committing a category-two offense (including rape, kidnapping, and aggravated robbery, as Martin was charged with in this case), the juvenile court must transfer the juvenile to adult criminal court (1) if the child was 16 or 17 years old at the time of the act charged, (2) there was probable cause to believe that the juvenile committed the act charged, and (3) it is alleged that the juvenile had a firearm on or about the juvenile's control while committing the act charged and to have displayed the firearm, brandished the firearm, indicated possession of the firearm, or used the firearm to facilitate the commission of

the act charged. R.C. 2152.12(A)(1)(b)(i) and 2152.10(A)(2)(b). In enacting the mandatory bindover statutes, the legislature "single[d] out older juvenile" offenders, "who are potentially more street-wise, hardened, dangerous, and violent." *State v. Lane*, 11th Dist. Geauga No. 2013-G-3144, 2014-Ohio-2010, ¶ 67. The purpose of the mandatory bindover statutes is to protect society and reduce violent crime by juveniles. *Id.*

{¶19} Thus, Martin was subject to a mandatory bindover after the juvenile court determined that there was probable cause that he committed the offenses. Martin is not challenging the bindover. And once a juvenile offender has been bound over to adult criminal court, the juvenile is no longer a "child" pursuant to R.C. 2152.02(C)(4), and is subject to adult penalties. *See State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829 (15-year-old who was transferred to adult court was subjected to "criminal prosecution and the full range of adult punishment").

{¶20} Ohio courts have continually found that the mandatory bindover statute is constitutional and does not violate due process or other constitutional rights. *State v. Agee*, 133 Ohio App.3d 441, 728 N.E.2d 442 (2d Dist.1999); *State v. Kelly*, 3d Dist. Union No. 14-98-26, 1998 Ohio App. LEXIS 5630 (Nov. 18, 1998); *State v. Lee*, 11th Dist. Lake No. 97-L-091, 1998 Ohio App. LEXIS 4250 (Sept. 11, 1998); *State v. Collins*, 9th Dist. Lorain No. 97CA006845, 1998 Ohio App. LEXIS 2474 (June 3, 1998).

{¶21} To the extent that Martin argues that recent United States Supreme Court cases support his claim that he should not be treated as an adult because the court

reasoned that juveniles are less culpable than adults, we find his arguments misplaced. In the three cases that he relies on, the penalty imposed on the juvenile was a death sentence or a life sentence without the possibility of parole. *See Roper v. Simmons*, 543 U.S. 104, 102 S.Ct. 869, 161 L.Ed.2d 1 (2005) (capital punishment unconstitutional for juveniles); *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (the constitution prohibits a sentence of life without the possibility of parole for juveniles convicted of a nonhomicide offense), and *Miller v. Alabama*, 567 U.S. __, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (life sentence without the possibility of parole is unconstitutional for juveniles convicted of a homicide offense). The flaw in Martin's argument is that he is trying to equate a death sentence or a life sentence without the possibility of parole with having to register as a sex offender for life. It is illogical to do so and, as such, we decline to extend the reasoning in the three United States Supreme Court cases to the facts present here.

{¶22} Martin also cites to a recent Pennsylvania Supreme Court case, *In the Interest of J.B.*, 107 A.3d 1, 2014 Pa. LEXIS 3468 (Dec. 29, 2014), claiming that it found "that the irrebuttable presumption created by Pennsylvania's SORNA [Sex Offender Registration and Notification Act; Pennsylvania's version of the Adam Walsh Act] violated the due process rights of juvenile offenders." While he is correct that the Pennsylvania Supreme Court held that, it did so involving juveniles *in juvenile court*. The juveniles at issue in *J.B.* were adjudicated delinquent of certain sexually oriented offenses, were automatically classified as Tier III sex offenders, and became subject to a

lifetime registration under Pennsylvania's SORNA. *Id.* at 2-3. The juveniles were not convicted of a sexually oriented offense in adult court, as Martin was here.

{¶23} The Ohio Supreme Court has also similarly held that certain provisions under R.C. 2152.86 (enacted under S.B. 10, Ohio's Adam Walsh Act), requiring "automatic, lifelong registration and notification requirements on juvenile sex offenders *tried within the juvenile system*," are unconstitutional under the United States and Ohio Constitutions. (Emphasis added.) *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, syllabus. The unconstitutional provisions in R.C. 2152.86 involved juveniles where the juvenile court had imposed a "serious youthful offender ["SYO"] dispositional sentence" on them. *Id.* at ¶ 13. The Ohio Supreme Court stressed that "again, we are dealing in this case with juveniles who remain under the jurisdiction of the juvenile court," where a juvenile judge has determined that the juvenile, although with a SYO disposition, is "amenable to the rehabilitative aims of the juvenile system" and is "in a category of offenders that does not include the worst of those who commit crimes as juveniles." *Id.* at ¶ 41.

{¶24} The Ohio Supreme Court explained in *C.P.* that "'the nature of an SYO disposition requires that the juvenile remain under the continuing jurisdiction of a juvenile judge.'" *Id.* at ¶ 14, quoting *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209. Regarding a SYO disposition and being subject to lifetime registration and notification requirements, the court explained:

> A juvenile charged as a potential serious youthful offender does not face bindover to an adult court; the case remains in the juvenile court.

Under R.C. 2152.11(A), a juvenile defendant who commits certain acts is eligible for "a more restrictive disposition." That "more restricted disposition" is a "serious youthful offender" disposition and includes what is known as a blended sentence — a traditional juvenile disposition coupled with the imposition of a stayed adult sentence. R.C. 2152.13. The adult sentence remains stayed unless the juvenile fails to successfully complete his or her traditional juvenile disposition. R.C. 2152.13(D)(2)(a)(iii). Theoretically, the threat of the imposition of an adult sentence encourages a juvenile's cooperation in his own rehabilitation, functioning as both carrot and stick.

[*D.H.*] at ¶ 18.

Only further bad acts by the juvenile as he is rehabilitated in the juvenile system can cause the stayed adult penalty to be invoked:

Any adult sentence that the trial court imposes through R.C. 2152.13(D)(2)(a)(i) is only a potential sentence — it is stayed pursuant to R.C. 2152.13(D)(2)(a)(iii) "pending the successful completion of the traditional juvenile dispositions imposed." R.C. 2152.13(D)(2)(a)(ii) requires the court to impose a juvenile disposition when it imposes an adult sentence; how the juvenile responds to that disposition will determine whether the stay is lifted on the adult sentence.

[*D.H.*] at ¶ 30.

R.C. 2152.86 changes the very nature of an SYO disposition, imposing an adult penalty immediately upon the adjudication. The juvenile is not given the opportunity to avoid the adult portion of his punishment by successfully completing his juvenile rehabilitation. Instead, he must comply with all of S.B. 10's reporting and notification requirements for Tier III sexual offenders contained in R.C. Chapter 2950.

*C.P.* at ¶ 14-16.

{¶25} The Ohio Supreme Court noted again in its analysis in *C.P.* how significant it was that the issues involved in the case involved a juvenile who was not bound over to adult criminal court. It stated:

Since we are deciding a case involving a juvenile who has not been bound over to adult court, the goals of juvenile disposition are relevant to our analysis. R.C. 2152.01 establishes the purposes of any juvenile disposition:

(A) The overriding purposes for dispositions under this chapter are to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender. These purposes shall be achieved by a system of graduated sanctions and services.

Lifetime registration and notification requirements run contrary to R.C. 2152.01's goals of rehabilitating the offender and aiding his mental and physical development. Instead, lifetime registration and notification ensure that [the juveniles at issue] will encounter continued difficulties, because of their offenses, long into adulthood. Notification and registration anchor the juvenile offender to his crime.

*Id.* at ¶ 46-47.

{¶26} In *C.P.*, the Ohio Supreme Court went on to explain how requiring juveniles — who remain in the juvenile system — to register for life and be subject to the public notification requirements under R.C. 2152.86, "runs counter" to the confidentiality that "has always been at the heart of the juvenile system." *Id.* at ¶ 62. "Ohio's juvenile system is designed to shield children from stigmatization based upon the bad acts of their youth." *Id.* at ¶ 63. The Supreme Court reasoned that the "[r]egistration and notification requirements [of R.C. 2152.86] frustrate two of the fundamental elements of juvenile rehabilitation: confidentiality and the avoidance of stigma." *Id.* at ¶ 67.

{¶27} In this case, however, the same reasoning simply does not apply. Martin's real contention is with the mandatory bindover statute, which has repeatedly been

declared constitutional, not the "automatic and lifetime requirement of sex-offender registration and notification." Had Martin been able to remain in the juvenile system, he would have been entitled to all of its protections under the law.

{¶28} We note that on February 10, 2016, the Ohio Supreme Court declined jurisdiction over these exact two constitutional issues (the exact issues that Martin raised in his first and second assignments of error) under the same set of facts (a juvenile who had been bound over to adult criminal court and had been labeled a Tier III sex offender). *See State v. Reidenbach*, *02/10/2016 Case Announcements*, 2016-Ohio-467 (lower court held that because the juvenile defendant had been bound over to adult criminal court, which he did not challenge, his arguments had no merit).

{¶29} Accordingly, we find no merit to Martin's first and second assignments of error and overrule them.

## III. Ineffective Assistance of Counsel

{¶30} In his third assignment of error, Martin argues that his trial counsel was ineffective for failing to object "to the imposition of an adult classification on a juvenile offender." But because we have already found that his arguments in his first and second assignments of error have no merit and that he would have been classified as an adult sex offender even if his counsel had objected, we find no merit to his third assignment of error and summarily overrule it.

{¶31} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

LARRY A. JONES, SR., A.J., and
PATRICIA ANN BLACKMON, J., CONCUR