[Cite as *State v. Coran*, 2023-Ohio-3909.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | Appeal No. 2023-CA-12 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0686 |
| | : | |
| TEJAN K. CORAN | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 27, 2023

. . . . . . . . . . .

CRAIG M. JAQUITH, Attorney for Appellant

REBEKAH S. SINNOTT, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Tejan K. Coran appeals from his conviction and sentence on one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12, following a jury trial. For the reasons that follow, we conclude that the evidence was insufficient to convict Coran of a fourth-degree felony under R.C. 2923.12

but was sufficient to convict Coran of a first-degree misdemeanor under that statute. Therefore, we will reverse the judgment in part and remand the matter for the trial court to modify Coran's conviction of carrying a concealed weapon to a first-degree misdemeanor and to sentence Coran accordingly. In all other respects, the judgment will be affirmed.

I.      Facts and Course of Proceedings

{¶ 2} On August 30, 2022, a Clark County grand jury indicted Coran on one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A), relating to an incident that occurred on August 16, 2022. Coran pleaded not guilty. A jury trial was held on January 19, 2023.

{¶ 3} Miguel Powers testified first for the State. Tr. 73-93. On the afternoon of August 16, 2022, he was driving his truck home from a store. There were two men in the middle of the street, and he slowed as he approached and passed them. One of the two men intentionally struck his passenger side mirror, knocking part of it into the passenger seat. The man who hit the mirror was Coran, whom Powers recognized from a week earlier when he saw Coran shoot a gun. After the mirror was struck, Powers stopped his truck. He got out of the truck and began cursing. Coran and the other man approached Powers. Coran then pulled a black gun out of his fanny pack and pointed it at Powers. At that time, Powers thought his "life could have ended right then and right there." *Id.* at 82.

{¶ 4} Powers was asked by counsel for the State whether Coran held the gun out

to be a loaded weapon. Powers responded, "Seen it in his eyes. He wasn't playing." *Id.* When asked on redirect examination whether Coran had acted like the gun was loaded, Powers testified "I seen it in his eyes." *Id.* at 93. He believed Coran was threatening his life. After Powers saw the gun, he was unable to say anything, backed up, got into his truck, and drove to his house. He then called 9-1-1 to report what had happened. Powers testified on cross-examination that he does not drink alcohol.

**{¶ 5}** Springfield Police Detective Daniel DeWine testified next for the State. *Id.* at 94-99. He has worked 31 years for the Springfield Police Department. On August 17, 2022, he compiled a photo lineup for Powers to review. Powers identified Coran out of the photo lineup.

**{¶ 6}** Springfield Police Officer Zachary Chenoweth testified next for the State. *Id.* at 100-106. He located two males at 314 East Rose Street who matched the description given by Powers. The smaller of the two men went inside the house when Officer Chenoweth approached. The owner of the house confirmed that a male named "Te" was inside the house. Another police officer alerted Officer Chenoweth that "Te" was short for Tejan Coran. According to the other police officer, Coran liked to hang out at that residence. Officer Chenoweth testified that he did not locate any fanny pack or gun and was not permitted to go into the residence on East Rose Street. Powers confirmed that the bigger male, Leroy DeArmond, was one of the two men involved in the incident involving his truck's mirror.

**{¶ 7}** Detective Ronald Jordan also testified for the State. *Id.* at 110-120. He had been a detective for 19 years and worked for the Springfield Police Department. He

investigated the August 16, 2022 incident involving Powers, Coran, and DeArmond. Detective Jordan noted that the passenger side mirror on Powers' truck had marks on it consistent with being struck by a hard object, not clothing or a person's soft tissue. He escorted Powers to 314 East Rose Street, where Powers positively identified DeArmond as one of the two males who participated in the mirror incident earlier that day. Detective Jordan did not notice any smell of alcohol coming from Powers. Detective Jordan later interviewed Coran, whose story was different from Powers' story. Coran did not mention his brother during the interview with Detective Jordan.

{¶ 8} Coran testified in his own defense at trial. *Id.* at 125-146. He was 20 years of age at the time of trial and had no previous felony convictions or charges. According to Coran, the incident involving Powers took place no later than 1:00 p.m. on August 16, 2022, as he was walking with his brother and DeArmond. Coran testified that DeArmond pulled Coran out of the path of Powers' truck, which was not slowing down as it approached the three men. Powers then began cursing and got out of his truck. Coran noticed that he smelled beer coming from Powers and there was a beer in the cup holder inside Powers' truck. There were people in the neighborhood encouraging Coran to call the police and report Powers, but Coran's brother talked him out of it. Coran testified that he did not own a weapon and he had been reaching for a phone in his fanny pack when Powers confronted him. Prior to trial, Coran went to Powers' residence and said to him, "Are we cool?" According to Coran, what he meant by this question was "Like, are you not gonna try to, you know what I mean, put me in a situation that I don't need to be in." *Id.* at 143-144.

{¶ 9} The jury returned a guilty verdict against Coran and found that Coran's gun had been loaded or ammunition had been ready at hand. On January 31, 2023, the trial court entered judgment against Coran, convicting him of one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A). The trial court sentenced him to 14 months in prison and notified him that he would be subject to up to two years of post-release control upon his release from prison.

{¶ 10} On March 20, 2023, Coran filed a notice of appeal and a motion for leave to file a delayed appeal. We granted the motion on April 6, 2023. The parties then filed their respective appellate briefs.

II.     Coran Waived His Constitutional Challenge by Failing to Raise It in the Trial Court

{¶ 11} Coran's first assignment of error states:

OHIO LAW REGARDING CARRYING A CONCEALED WEAPON, AS APPLIED TO 18-TO-20-YEAR-OLDS, VIOLATES THE SECOND AMENDMENT.

{¶ 12} Coran contends that "Ohio's concealed carry statutes treat 18-to-20-year-old adults differently from those who are older." Appellant's Brief, p. 4. According to Coran, the United States Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. __, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022), "rewrote the test for determining whether a given law restricting firearm rights violates the Second Amendment." Appellant's Brief, p. 3-4. Coran argues that "[h]ere, as in *Bruen*, the state

cannot meet its burden to show that the laws in question are constitutional, because it cannot show that there was a founding-era historical tradition of treating adults under 21 years of age differently from those who [are] over 21, for purposes of bearing arms." *Id.* at 4.

{¶ 13} The State responds that Coran waived his constitutional challenge by failing to raise it with the trial court. Further, the State contends that the *Bruen* decision left untouched "prior Supreme Court decisions making clear that the regulation of firearms for specific classes of individuals can be Constitutional." Appellee's Brief, p. 6. The State also notes that "[e]xamples of regulations based upon age are rampant in our history." *Id.* at 7.

{¶ 14} Coran concedes that he failed to raise his constitutional argument at the trial court level. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus.

{¶ 15} As the Ohio Supreme Court has noted, "the waiver doctrine announced in *Awan* is discretionary." *In re M.D.*, 38 Ohio St.3d 149, 151, 527 N.E.2d 286 (1988). For example, "[i]n the criminal context, Crim.R. 52(B) provides that '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' " *Id.* In the plain error context, however, "we require a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise,

and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. "The burden of demonstrating plain error is on the party asserting it." *Id.*, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 16} Coran has made no attempt on appeal to argue that the trial court committed plain error and that reversal is necessary to correct a manifest miscarriage of justice. Therefore, we decline to invoke the plain error doctrine to salvage Coran's waived argument. *Id.* at ¶ 21.

{¶ 17} Coran contends, however, that we should exercise our discretion to consider his waived constitutional challenge based on our previous acknowledgment that we " 'may elect to consider waived constitutional challenges to the application of statutes * * * where the rights and interests involved may warrant it.' " Appellant's Brief, p. 3, quoting *State v. May*, 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, ¶ 33. Coran argues that "the rights and interests of all young adult Ohioans similarly situated to Mr. Coran warrant resolution of his Second Amendment claim." Appellant's Reply Brief, p. 1. According to Coran, "[n]ot reaching the merits of his claim * * * would arguably tend to relegate the Second Amendment right claimed to 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees that [the United States Supreme Court has] held to be incorporated into the Due Process Clause.' " *Id.*, quoting *McDonald v. Chicago*, 561 U.S. 742, 780, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

{¶ 18} We do not agree with Coran that the "rights and interests involved" in this case warrant exercising our discretion to consider Coran's waived constitutional argument. To better understand why we conclude this, it is important to review the origin of the "rights and interests involved" language we quoted in *May*. Our quote in the *May* case relating to exercising discretion to consider waived constitutional challenges in cases "where the rights and interests involved may warrant it" had its origins in the Ohio Supreme Court's decision in *In re M.D.* There, the Ohio Supreme Court stated, in part: "Thus, even where waiver is clear, this court reserves the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it." *In re M.D.,* 38 Ohio St.3d at 151, 527 N.E.2d 286. For this proposition, the Supreme Court cited *State v. Zuern*, 32 Ohio St.3d 56, 63, 512 N.E.2d 585 (1987). A review of that case is helpful to understanding the limitations on what the Supreme Court meant by "where the rights and interests may warrant it."

{¶ 19} In *Zuern*, the Ohio Supreme Court was faced with nine constitutional challenges to the death penalty statute, none of which were raised at the trial court level. *Id.* at 63. The State asserted, and the court of appeals agreed, that appellant had waived his constitutional challenges. The Supreme Court stated, in part:

> Generally, the law in Ohio is that the failure to raise the issue of a statute's constitutionality at the trial level constitutes a waiver of such issue. * * * The acceptable procedure is to raise any constitutional challenges to the death penalty statute by way of specific motions, with the opportunity for the state to respond and the trial court to rule on said motions.

*However, because of the nature of the case and the exacting review necessary where the death penalty is involved, we reserve the right to consider the constitutional challenges in particular cases.*

(Emphasis added.) *Id.*

**{¶ 20}** The Court's language in *Zuern* made it clear that the Supreme Court was reserving the right to consider waived constitutional challenges in a limited class of cases, like the application of the death penalty and the necessarily exacting review required in those cases. Were we to construe the language "where the rights and interests involved may warrant it" out of context from the facts of *Zuern*, we would run the danger of blessing the review of waived arguments in virtually all cases. Such a result would all but eliminate the well-established rule that " 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' " *Awan*, 22 Ohio St.3d at 122, 489 N.E.2d 277, quoting *Sate v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. Further, " 'justice is far better served when [the reviewing court] has the benefit of briefing, arguing, and lower court consideration before making a final determination.' " *Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2.

**{¶ 21}** While Coran, like most litigants, believes his waived constitutional challenge involves rights and interests that warrant this Court's overlooking his waiver of the challenge, we do not believe the record before us rises to the level of the type of case the

Supreme Court was contemplating in *Zuern.* Therefore, we decline to exercise our discretion to review Coran's waived constitutional challenge.

{¶ 22} The first assignment of error is overruled.

III.     There Was Insufficient Evidence Presented to the Jury to Support Its Finding that Coran's Gun Was Loaded or Ammunition Was Ready at Hand

{¶ 23} Coran's second assignment of error states:

THE STATE ADDUCED INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT THERE WAS AMMUNITION LOADED IN THE FIREARM IN QUESTION, OR READILY AT HAND.

{¶ 24} Coran was convicted of one count of carrying a concealed weapon, a fourth-degree felony in violation of R.C. 2923.12(A).   In order to prove a violation of this statute, the State was required to establish that Coran knowingly carried or had, concealed on his person or concealed ready at hand, any of the following: (1) a deadly weapon other than a handgun; (2) a handgun other than a dangerous ordnance; or (3) a dangerous ordnance.   According to R.C. 2923.12(F)(1), a violation of R.C. 2923.12(A) is a first-degree misdemeanor; however, the level of the offense may be raised if the State proves additional facts.   Relevant to this appeal, to be convicted of a fourth-degree felony rather than a first-degree misdemeanor under R.C. 2923.12, the State had to prove that Coran's weapon was a firearm that was "either loaded or for which the offender has ammunition ready at hand."   R.C. 2923.12(F)(1).

{¶ 25} "An appellate court's function when reviewing the sufficiency of the

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 26} Sufficient evidence was presented to the jury to establish that Coran was carrying a concealed weapon in his fanny pack during his confrontation with Powers. Therefore, there was sufficient evidence to establish a violation of R.C. 2923.12(A). The question then becomes whether there was sufficient evidence to elevate the level of the offense from a first-degree misdemeanor to a fourth-degree felony.

{¶ 27} According to Coran, the State at most proved that the gun was operable, but never submitted any credible evidence that the gun was loaded or ammunition was ready at hand. Coran contends that since the State failed to present facts necessary to elevate the offense to a fourth-degree felony, we should reverse the fourth-degree felony conviction "and order that he be found guilty of, and resentenced for, the first-degree misdemeanor form of that offense." Appellant's Brief, p. 8. We agree.

{¶ 28} The gun used by Coran was never located. Powers was the only witness at trial who testified about whether Coran's gun was loaded. Powers was asked by the prosecutor whether Coran held the gun out to be a loaded weapon. Powers responded, "Seen it in his eyes. He wasn't playing." Tr. 82. When asked on re-direct examination

whether Coran acted like the gun was loaded, Powers testified "I seen it in his eyes."   *Id.* at 93.

**{¶ 29}** Powers' testimony about Coran pointing the gun at him arguably was sufficient to establish that Coran's gun was operable.   *See, e.g., In re D.W.*, 1st Dist. Hamilton Nos. C-180644, C-180654, 2020-Ohio-2707, ¶ 19-20.   But operability does not establish that the gun was loaded or ammunition was ready at hand.   *State v. Smith*, 2d Dist. Clark No. 2006-CA-59, 2007-Ohio-3167, ¶ 7, 13, 17-18.   Powers' testimony that he believed the gun was loaded, because he could see it in Coran's eyes, was insufficient as a matter of law to establish that the gun was loaded or ammunition was ready at hand. Further, the fact that Powers testified that he had witnessed Coran fire a gun a week before the August 16, 2022 incident was insufficient as a matter of law to establish that the gun Coran possessed on August 16th was loaded or ammunition was ready at hand. Not only was that event a week before the incident in question, but Powers did not testify that the gun he witnessed Coran shooting a week earlier was even the same gun Coran pointed at him on August 16th.   While we acknowledge the difficulty in proving a gun was loaded when the gun was not fired and the gun was not found, this difficulty does not warrant ignoring the plain language of the statute.   To allow the State to elevate the level of the offense to a fourth-degree felony simply by highlighting the fact that Coran pointed the gun at Powers or through Powers' naked belief that Coran's eyes told him the gun was loaded would render meaningless the language of the statute that requires the State to prove beyond a reasonable doubt that the gun was loaded or ammunition was ready at hand.

**{¶ 30}** The evidence was insufficient as a matter of law to establish that Coran's gun was loaded or that ammunition was ready at hand. Therefore, Coran should not have been convicted of the fourth-degree felony form of the carrying a concealed weapon offense. Rather, Coran may only be convicted of the first-degree misdemeanor form of the offense. On remand, the trial court shall enter a modified judgment finding Coran guilty of R.C. 2923.12(A), a first-degree misdemeanor, and sentence Coran accordingly.

**{¶ 31}** The second assignment of error is sustained.


IV.　　Conclusion

**{¶ 32}** The judgment of the trial court will be affirmed in part and reversed in part, and the matter will be remanded to the trial court to (1) modify its judgment to find Coran guilty of carrying a concealed weapon as a first-degree misdemeanor in violation of R.C. 2923.12(A), and (2) sentence Coran accordingly.

. . . . . . . . . . . . .


EPLEY, J. and HUFFMAN, J., concur.