TASIN, APPELLANT, *v.* SIFCO INDUSTRIES, INC., APPELLEE.

[Cite as Tasin *v.* SIFCO Industries, Inc. (1990), 50 Ohio St. 3d 102.]

(No. 89-91—Submitted January 24, 1990—Decided April 11, 1990.)

*Willacy & LoPresti, Aubrey B. Willacy* and *Lisa Amato Reid,* for appellant.

*Duvin, Cahn & Barnard, Thomas H. Barnard, David J. Somrak, Squire, Sanders & Dempsey, John T. Meredith* and *George S. Crisci,* for appellee.

H. BROWN, J. Appellant Tasin challenges the trial court's entry of judgment against him based on the answers to the special interrogatories and the court's refusal to grant a new trial based on his allegations of impropriety in the jury deliberations. For the reasons which follow, we reject these challenges and affirm the judgment of the court below.

## I
### Entry of Judgment on Special Interrogatories

In the instant case, the trial court held that the jury's answers to interrogatory Nos. 7 and 8, finding that SIFCO had just cause to discharge Tasin, were "inconsistent" with the general verdict, and entered judgment accordingly. The use of special interrogatories is governed by Civ. R. 49(B), which provides in pertinent part:

"* * * When one or more of the answers is inconsistent with the general verdict, [the court has three options:] judgment may be entered * * * in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

Where the answers to interrogatories are inconsistent with the verdict, the court has discretion to choose among the three options provided by Civ. R. 49(B). *Wagner* v. *Rollercade II, Inc.* (1983), 11 Ohio App. 3d 199, 11 OBR 294, 463 N.E. 2d 1295. However, we have held that "judgment should not be rendered on answers to interrogatories as against the general verdict unless such answers are inconsistent *and irreconcilable* with the general verdict." (Emphasis added.) *Otte* v. *Dayton Power & Light Co.* (1988), 37 Ohio St. 3d 33, 41, 523 N.E. 2d 835, 842; see, also, *Becker* v. *BancOhio Natl. Bank* (1985), 17 Ohio St. 3d 158, 17 OBR 360, 478 N.E. 2d 776.

Tasin attacks the trial court's entry of judgment on several fronts. He claims that the court's action was improper because the court found, on the record, that the answers were merely "inconsistent" with the verdict, and not "inconsistent and irreconcilable" as required by *Otte* and *Becker*. He also contends that the trial court abused its discretion by not ordering further deliberations. He proposes alternative rules of construction by which the answers and verdict may be harmonized or if not harmonized, the answers disregarded. He claims that some of the interrogatories were ambiguous and should be construed against their drafter, SIFCO. Finally, he argues that the jury's finding of

"just cause" is defective because the jury was presented with evidence of alleged misconduct which Kevin O'Donnell did not have available when he made the decision to fire Tasin. We shall discuss these arguments in turn.

## A

Tasin's claim that the interrogatories were inconsistent but not irreconcilable is not supported by the record. In interrogatory Nos. 7 and 8, the jury found that Tasin was discharged for just cause.[2] If SIFCO had just cause to discharge Tasin, his discharge could not possibly be wrongful. If the discharge was not wrongful, Tasin has no claim for damages. Clearly, the answers to interrogatory Nos. 7 and 8 are irreconcilable with the general verdict. The trial court did not use the word "irreconcilable" in its judgment entry but the absence of the word does not reconcile the irreconcilable.

Because the answers and verdict are irreconcilable, the court could, consistent with *Otte* and *Becker,* enter judgment in accord with the answers and against the general verdict. The court could have resubmitted the case to the jury, or required a new trial. The choice was within its discretion. *Wagner, supra.* We cannot say that the court abused its discretion by choosing to enter judgment.

## B

Tasin's complaints about "im-proper" and "ambiguous" interrogatories are unfounded. Our review of the challenged interrogatories, Nos. 7, 8, and 9(B),[3] convinces us that they are neither ambiguous nor improper.

## C

Finally, Tasin's claim that the jury could not have found just cause for his discharge based on information O'Donnell had at the time of the discharge is not supported by the record. The only evidence of misconduct unknown to O'Donnell which SIFCO presented at trial was the testimony of Lucille Ovark, an employee in the human resources department, that she was sexually harassed in a manner similar to the other women whose stories were known to O'Donnell. Even if Ovark's testimony is disregarded, there is sufficient evidence to support a finding of just cause.

The parties have extensively briefed the issue of whether Tasin was an employee at will, or whether he was subject to discharge only for just cause. Because the jury found that SIFCO had just cause to discharge him, the issue is moot.[4]

## II
### Jury Misconduct Issues

Loc. R. 22(D) of the Cuyahoga County Court of Common Pleas, General Division, provides:

"No attorney connected with the trial of an action shall himself, or through any investigator or other per-

---

[2] The answers to interrogatory Nos. 7 and 8 are not necessarily inconsistent with the answers to Nos. 4 to 6. The parties do not dispute the fact that Tasin was not given a chance to answer the allegations of sexual harassment before being discharged. Based on the evidence, the jury could reasonably have concluded that Tasin would have been discharged even if he had been accorded his "industrial due process" rights.

[3] See fn. 1, *supra.*

[4] Tasin contends that the jury improperly calculated his damages. In view of our finding that SIFCO was entitled to judgment in its favor, this issue is also moot.

son acting for him, interview, examine or question any juror with respect to the verdict or deliberations of the jury in the action except on leave of Court granted upon good cause shown."

In addition, the court orally instructed counsel and the jurors not to discuss the case with each other, on pain of contempt, when it discharged the jury.

## A

In support of post-trial motions, including a motion for new trial, Tasin presented an affidavit purporting to set forth the content of telephone conversations between himself and several jurors. According to the affidavit, the jurors with whom Tasin spoke "were furious over the refusal by the trial court to afford them any opportunity to explain the rationale of their decision," and "explained" their answers as, in part, the product of confusing jury instructions, the refusal of bailiff William Lennon to transmit a question to the judge,[5] and a threat by juror Susan Grant "that she intended to reveal their discussions upon the issues to her 'friend' Kevin O'Donnell; such threats having been screamed at the others while Ms. Grant stood upon the seat of a chair."[6] Tasin subpoenaed the jurors mentioned in the affidavit to appear as witnesses at the hearing of his post-trial motions.

The trial court refused to grant leave under Loc. R. 22(D) for Tasin's counsel to contact the members of the jury, or to hear testimony from the subpoenaed jurors. Tasin's post-trial motions were denied.

Tasin contends that he was entitled to a new trial based on the misconduct alleged in his affidavit. This contention has no merit.

Tasin's affidavit relates statements purportedly made by other persons in order to prove the truth of the matters asserted. The affidavit is hearsay under Evid. R. 801(C), and is inadmissible under Evid. R. 802 unless it comes within one of the exceptions to the hearsay rule under Evid. R. 803 and 804. Tasin has not advanced, and we have not been able to independently discover, any exception which would encompass these statements.

Even if the statements were allowed under a hearsay exception, they would be inadmissible under Evid. R. 606(B), which provides:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent or to dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was brought to the jury's attention or whether any outside influence was brought to bear on any

---

[5] In an affidavit procured by SIFCO's counsel and presented to the court as part of its memorandum opposing Tasin's post-trial motions, bailiff Lennon said that he had been asked to convey a question to the judge. After explaining that all questions had to be in writing, Lennon "was told that the jury did not want to submit a question at that time."

[6] Following Kevin O'Donnell's testimony on direct examination, juror Grant came forward and told the court that she was acquainted with O'Donnell. At an in-chambers *voir dire*, with counsel for both sides present, Grant said that her acquaintance with O'Donnell would not affect her ability to be fair and impartial. *Tasin's counsel did not question Grant, nor object to her continued presence on the jury.*

juror, only after some outside evidence of that act or event has been presented. However, a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. *His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.*" (Emphasis added.)

Tasin's affidavit seeks to introduce juror statements about the deliberative process. This is precisely what Evid. R. 606 prohibits. Finally, bailiff Lennon's refusal to transmit unwritten questions to the judge was not improper. Lennon was following the court's standard procedure. A requirement that the jury's questions be in writing eliminates the risk of oral mistransmission and preserves the question as part of the record, so that the question and the response can be evaluated by a reviewing court.

### B

Tasin attacks the prohibition against juror contact imposed by Loc. R. 22(D), claiming it is an unconstitutional prior restraint on freedom of speech.

As the United States Supreme Court has noted in a similar context, there is a "weighty government interest in insulating the jury's deliberative process" from post-verdict inquiry by the parties. *Tanner* v. *United States* (1987), 483 U.S. 107, 120 (rejecting Sixth Amendment challenge to Fed. R. Evid. 606[b]); see, also, *McDonald & U.S. Fid. & Guar. Co.* v. *Pless* (1915), 238 U.S. 264, 267-268. As one federal circuit court has observed, "[p]rohibiting post-verdict interviews protects the jury from an effort to find grounds for post-verdict charges of misconduct, reduces the 'chances and temptations' for tampering with the jury, increases the certainty of civil trials, and spares the district courts time-consuming and futile proceedings." *Haeberle* v. *Texas Internatl. Airlines* (C.A.5, 1984), 739 F. 2d 1019, 1021; *Big John, B.V.* v. *Indian Head Grain Co.* (C.A.5, 1983), 718 F. 2d 143, 149-150.

Like Evid. R. 606, Loc. R. 22(D) bolsters this vital interest. Tasin's purported First Amendment right to post-verdict juror interrogation fails when balanced against the need to assure "full and frank discussion in the jury room * * * and the community's trust in a system that relies on the decisions of laypeople * * *." *Tanner, supra,* at 120-121. Accordingly, we hold that a local rule, such as Loc. R. 22(D), which prohibits post-trial communication between parties or their counsel and jurors, without leave of court, for the purpose of investigating the validity of the verdict, is not an unconstitutional prior restraint on freedom of speech.

For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT and RESNICK, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the judgment of the majority and paragraph one of the syllabus. I vigorously, but respectfully, dissent from paragraph two of the syllabus and the majority's ultimate conclusion regarding Loc. R. 22(D) of the Cuyahoga County Court of Common Pleas, General Division.

I am alarmed (even "outraged" would not overstate my feeling) by the majority's holding that a rule of court that prohibits consenting adults from talking to each other without prior approval of a judge is constitutional. Loc. R. 22(D) of the Cuyahoga County Court of Common Pleas, General Division, is a classic example of one of the most insidious types of censorship — that of "prior restraint." It grieves me that a court which has much on which to pride itself in the First Amendment area of free speech, and in the areas of open meetings and open records (albeit under continual prodding), now takes such a giant step backward in the never-ending battle to assure that the rights of all people guaranteed by the First Amendment are preserved.

Clearly, the rule under consideration does not prohibit the press from interviewing jurors. That this is so does not, of course, make the rule any less onerous. It is accepted that the press has no greater First Amendment rights than do individual citizens. But it also follows that if the rights of citizens and the press under the First Amendment are equal, then upholding a restriction on the rights of individuals could easily be followed by restricting the same rights of the press. Would a majority of this court countenance a rule that purported to do just that? I would hope not!

The majority admits that when discharging the jury (the case had been concluded) "* * * the court instructed counsel and the jurors not to discuss the case with each other, on pain of contempt * * *." This instruction, combined with Loc. R. 22(D), is as absolute an application of prior restraint as can be imagined. While I recognize that the doctrine of prior restraint, when attempted to be used, is generally applied in connection with the press and publication by the press of material which government prefers not be printed, it would also seem to be applicable, and no less insidious when applied, to the probability, in advance, of speech protected by the First Amendment to the United States Constitution and Section 11, Article I of the Ohio Constitution.

It is difficult to imagine anything more clear than the language of Section 11, Article I. In pertinent part it states: "*Every* citizen may freely *speak,* write, and publish his sentiments on *all subjects,* being responsible for the abuse of the right; and *no law shall be passed to restrain or abridge the liberty of speech,* or of the press. * * *" (Emphasis added.)

Further in *New York Times Co.* v. *United States* (1971), 403 U.S. 713, 714, the United States Supreme Court said that *any* system of prior restraint of *expression* bears a heavy presumption against its constitutional validity and the government carries a heavy burden to justify enforcing any system of prior restraint.

Yet, notwithstanding all the foregoing, today this court approves Loc. R. 22(D). If the majority's purpose is to protect the sanctity of verdicts, then Evid. R. 606(B) provides a more than adequate vehicle for that purpose. If the majority's purpose is to protect jurors from harassment by counsel and/or parties, then the procedure often used by trial judges in instructing jurors that they are not required to (but may) discuss the case with *anyone* is sufficient protection for a juror not wishing to discuss a verdict and his or her deliberations or vote.

Having interchange between lawyers and jurors after a case has been concluded has been a learning device long used and respected in our profession. It helps lawyers to know what they might have done better. I have been involved (several times)

where the jury has invited my adversary and myself into the jury room and candidly answered our questions concerning our performance. We were told about our demeanor, our competence, our witnesses, our evidence, and upon which points the case turned. Where else can practicing lawyers (whose job it is to make the system work by being properly prepared) get such an education? Certainly not from any CLE course!

Because I believe the majority makes a grave error in upholding a rule which protects a prior restraint, I must dissent.