THE STATE, EX REL. THE CINCINNATI POST, *v.* COURT OF COMMON PLEAS OF HAMILTON COUNTY ET AL.

[Cite as State, ex rel. The Cincinnati Post, *v.* Hamilton Cty. Court of Common Pleas (1991), 59 Ohio St. 3d 103.]

(No. 90-1923—Submitted January 15, 1991—Decided April 24, 1991.)

104

*Baker & Hostetler, Bruce W. Sanford, David L. Marburger* and *Jonathan D. Henry,* for relator.

*Arthur M. Ney, Jr.,* prosecuting attorney, *Roger E. Friedmann* and *Scott C. Kirschman,* for respondents.

*Per Curiam.* In this action, the Post challenges the constitutionality of the trial judge's post-verdict order that "[n]o one is to talk to the jurors about the case, and the jurors aren't to talk to anybody about it." We conclude that, while a more narrowly focused order might have been constitutional, this one violates the First Amendment.

I

Federal courts have struck down similar post-verdict orders on First Amendment grounds. Such a case was *United States* v. *Sherman* (C.A. 9, 1978), 581 F. 2d 1358, in which a trial court "forbade the jurors from discussing the case further with anyone * * * and * * * ordered everyone, including the news media, to stay away from the jurors." *Id.* at 1360. Noting that news gathering is protected by the First Amendment, see *Branzburg* v. *Hayes* (1972), 408 U.S. 665, 681, the *Sherman* court analyzed the order as a prior restraint on speech with "a heavy presumption against its constitutional validity." *Sherman, supra,* at 1361, citing *Bantam Books* v. *Sullivan* (1963), 372 U.S. 58, 70. To overcome this presumption, the order's proponents had to show "that the activity restrained poses a clear and present danger or a serious and imminent threat to a protected competing interest * * *"; that the restraint was narrowly drawn; and that no reasonable, less restrictive alternatives were available. *Sherman, supra,* at 1361.

Respondent trial court in *Sherman* suggested two justifications for the order. First, it argued that the order was needed "to enable the jurors to serve on future jury panels * * *." The *Sherman* court rejected this argument, reasoning that if post-verdict discussion of a past case threatened a juror's impartiality in future cases, "that could be discovered on future voir dire and the juror excused." *Id.*

Second, respondent argued that the order would "protect the jurors from harassment." But the appellate court pointed out that "jurors individually, perhaps, may not regard media interviews as harassing." *Id.* The *Sherman* court noted that trial courts may remedy actual harassment, but concluded that "this order is too broad." *Id.*

A similar ban on post-verdict juror

interviews was overturned by the Fifth Circuit Court of Appeals in *In re Express-News Corp.* (C.A. 5, 1982), 695 F. 2d 807. In *Express-News,* a local rule of court forbade interviewing any juror about the jury's deliberations or verdict in any action without leave of court. *Id.* at 808. Relying partly on *Sherman,* the appellate court held the rule unconstitutional as applied. The rule was not "narrowly tailored to prevent a substantial threat to the administration of justice." Instead, like the judge's order here, it was "unlimited in time and in scope, applying equally to jurors willing and anxious to speak and jurors desiring privacy, forbidding * * * courteous as well as uncivil communications, and foreclosing questions about a juror's general reactions as well as specific questions about other jurors' votes that might, at least under some circumstances, be inappropriate." *Id.* at 810. Accord *Journal Pub. Co.* v. *Mechem* (C.A. 10, 1986), 801 F. 2d 1233. See, also, *In re Memphis Pub. Co.* (C.A. 6, 1989), 887 F. 2d 646, 649; *United States* v. *Doherty* (D. Mass. 1987), 675 F. Supp. 719, 724 (trial court "did not and could not order" discharged jurors to refrain from discussing deliberations); *State, ex rel. Beacon Journal,* v. *McMonagle* (Ohio App. 1982), 8 Med. L. Rptr. 1927.

Respondents in the instant case advance two justifications for the trial court's order. First, they argue that the order simply enforces the jury's already expressed desire not to talk to the press about the case. There is authority suggesting that such an order would be proper. In *United States* v. *Harrelson* (C.A. 5, 1983), 713 F. 2d 1114, the court of appeals upheld a trial court's order forbidding anyone to make "repeated requests" that a juror discuss a case after the juror's refusal to do so. The court considered it reasonable to limit would-be questioners to one request; once that request was refused, any further queries would amount to "nagging." *Id.* at 1118.

We do not doubt the trial court's power, even after trial, to protect juror privacy from overly persistent interrogation. Nonetheless, respondents' argument fails for two reasons. First, the jurors have not expressed a desire to eschew discussion of the case. The only evidence that the jury did not want to talk was the foreman's statement; individual jurors were not asked. See *Sherman, supra,* at 1362 (district court's order erroneous because it deprived media of opportunity to ask jurors whether they wished to be interviewed). Indeed, it is not clear that the foreman even claimed to speak for every juror. He simply said, "We don't want to talk." "We" could have meant "a majority" or "a consensus."

Second, even if the foreman did speak for everyone on the jury, Judge Ruehlman's order does not allow for the possibility that some jurors may change their minds and choose to talk about the case. The order thus goes further than the asserted goal requires. Cf. *Harrelson, supra,* at 1118 (noting that juror who changes his mind remains free to initiate an interview).

Reasonable, less restrictive measures were available to protect juror privacy. Certainly a court may instruct the jurors that they have no obligation to discuss the case with anyone. *Sherman, supra,* at 1361-1362; *Express-News, supra,* at 811; *Journal Pub., supra,* at 1236-1237; *United States* v. *Franklin* (N.D. Ind. 1982), 546 F. Supp. 1133, 1144-1145. Or, like the trial court in *Harrelson,* a court may forbid reporters to pester jurors for interviews once the jurors have refused to talk. Such measures protect jurors

from harassment without violating First Amendment rights.

As a second justification for the order, respondents remind us that "the jury system and its deliberations * * * depend upon * * * confidentiality." "Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world." *Clark* v. *United States* (1933), 289 U.S. 1, 13 (Cardozo, J.). Accord Sharp, Postverdict Interrogation of Jurors by the Press: Is the First Amendment Absolute? (1984), 27 Res Gestae 380, 381; Note, Public Disclosures of Jury Deliberations (1983), 96 Harv. L. Rev. 886, 889-891.

Because confidentiality is important to the jury's independence, courts have upheld orders forbidding jurors to discuss the specific votes of other jurors. *Harrelson, supra,* at 1118, citing *Clark, supra.* See, also, *Express-News, supra,* at 810; *Journal Pub., supra,* at 1237 (dictum).

Again, however, Judge Ruehlman's order is too broad. Instead of narrowly focusing, like the order upheld in *Harrelson,* on protecting the confidentiality of other jurors' specific votes or opinions, Judge Ruehlman's order would prohibit a juror from waiving the confidentiality of even his own votes and opinions. Such a "categorical denial of all access," not tailored to the objectives cited to justify it, violates the First Amendment. *Express-News, supra,* at 811.

Respondents cite our recent decision in *Tasin* v. *SIFCO Industries, Inc.* (1990), 50 Ohio St. 3d 102, 553 N.E. 2d 257, as supporting the constitutionality of Judge Ruehlman's order. Noting the importance of " 'full and frank discussion in the jury room' * * *," we held in *Tasin* that "a local rule * * * which prohibits post-trial communication be-

tween parties or their counsel and jurors, without leave of court, for the purpose of investigating the validity of the verdict, is not an unconstitutional prior restraint on freedom of speech." *Id.* at 108, 553 N.E. 2d at 263, quoting *Tanner* v. *United States* (1987), 483 U.S. 107, 120.

We reject any analogy with *Tasin.* The local rule we upheld there restricted only parties and their counsel; the trial court's order here applies to "everyone." This distinction has twofold significance.

First, "[b]y voluntarily assuming the special status of trial participants and officers of the court, parties and their attorneys subject themselves to greater restraints on their communications than might constitutionally be applied to the general public." *Haeberle* v. *Texas Internatl. Airlines* (C.A. 5, 1984), 739 F. 2d 1019, 1022.

Second, the rule we upheld in *Tasin* was justified by "a 'weighty government interest in insulating the jury's deliberative process' from postverdict inquiry by the parties." *Tasin, supra,* at 108, 553 N.E. 2d at 263, quoting *Tanner, supra,* at 120. We noted that " '[p]rohibiting post-verdict interviews protects the jury from an effort to find grounds for post-verdict charges of misconduct, reduces the "chances and temptations" for tampering with the jury, increases the certainty of civil trials, and spares the district courts time-consuming and futile proceedings.' " *Id.,* quoting *Haeberle, supra,* at 1021. These concerns simply do not justify an order aimed at nonparties, who have "less incentive to upset a verdict than does a losing party or attorney." *Journal Pub., supra,* at 1236. See, also, *Express-News, supra,* at 810.

We thus reject both proffered justifications for Judge Ruehlman's order.

One commentator has suggested a third possible justification for imposing broad post-verdict gag orders on jurors. "* * * [E]xposure of jury deliberations brings to light not only differences of opinion among jurors, but also decisional premises with which various members of the public are bound to disagree. The revelation of these inevitable yet disquieting divergences may unnecessarily undermine public acceptance of jury verdicts." Note, Public Disclosures of Jury Deliberations, *supra,* at 891.

On this reasoning, then, a trial court may forbid discharged jurors to discuss the cases on which they sat, because such discussion might "unjustifiably impair public respect for the [jury] system," *id.* at 892; it might, in other words, influence public opinion in a way the court dislikes. Such reasoning is inconsistent on its face with the principles underlying the First Amendment, and we reject it.

In sum, respondents contend that the trial court's order serves important state interests, but we believe those interests would be as well or better served by a less restrictive, more narrowly focused order. We hold, therefore, that the order issued here violates the First Amendment.

## II

Having concluded that the order was unconstitutional, we now consider the remedy. Since the Post was not a party to the action in the common pleas court, it lacks standing to appeal the order. Thus, the Post lacks an adequate remedy at law, and some form of extraordinary relief is appropriate. See *In re T.R.* (1990), 52 Ohio St. 3d 6, 11, 556 N.E. 2d 439, 445.

Relator asks for a writ of mandamus, but relator's object is to keep Judge Ruehlman from enforcing his order; thus, "the requested relief would restrict, rather than compel, respondents * * *." *State, ex rel. Hensley,* v. *Nowak* (1990), 52 Ohio St. 3d 98, 556 N.E. 2d 171, 172. That is not the office of a writ of mandamus. "A writ of mandamus compels action or commands the performance of a duty * * *." *State, ex rel. Smith,* v. *Indus. Comm.* (1942), 139 Ohio St. 303, 22 O.O. 349, 39 N.E. 2d 838, paragraph two of the syllabus.

However, writs of prohibition have issued to prevent courts from enforcing gag orders that unconstitutionally impair the press' right to gather news. See, *e.g., In re T.R., supra; State, ex rel. Natl. Broadcasting Co.,* v. *Lake Cty. Court of Common Pleas* (1990), 52 Ohio St. 3d 104, 107, 556 N.E. 2d 1120, 1124. Thus, we will treat relator's complaint in mandamus as one in prohibition. See *State, ex rel. Burech, v. Belmont Cty. Bd. of Elections* (1985), 19 Ohio St. 3d 154, 156, 19 OBR 437, 438, 484 N.E. 2d 153, 155. Finding the trial court's order unconstitutional, we allow the writ of prohibition.

*Writ allowed.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.