[Cite as *State v. Gibson*, 2018-Ohio-3809.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-47 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-67 |
| | : | |
| KLAIN A. GIBSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of September, 2018.

. . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Klain A. Gibson, appeals from his conviction in the Greene County Court of Common Pleas after a jury found him guilty of felonious assault. In support of his appeal, Gibson contends that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. Gibson also contends that the trial court's response to a question posed by the jury during deliberations amounted to plain error and that the trial court should have granted his Crim.R. 33 motion for new trial based on that error. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On February 13, 2017, Gibson was indicted for one count of felonious assault in violation of R.C. 2903.11(A)(2), with an attendant three-year firearm specification. The charge and specification stemmed from allegations that Gibson shot Gregory Smith with a .9-millimeter handgun at a residence in Xenia, Greene County, Ohio. Gibson pled not guilty to the charge and the matter proceeded to a jury trial.

{¶ 3} A majority of the facts testified to at trial are not in dispute. In August or September 2016, Gibson's friend, De'Eric Gill, and Gill's girlfriend, Shannon Walker, moved into a rental house located in Xenia. Shortly thereafter, Gill and Walker ended their relationship. In November 2016, Gill moved out of the Xenia residence and returned to his original home in Cincinnati. Walker stayed at the Xenia residence, but was scheduled to move out on January 30, 2017.

{¶ 4} On January 29, 2017, the day before Walker was to move out of the Xenia residence, Walker's best friend, Aubree Lewis, and Walker's new love interest, Gregory

Smith, came over to the residence to help Walker box up her belongings.  After helping Walker, Lewis and Smith stayed the night.  Lewis slept on the couch and Smith slept upstairs in Walker's bedroom.

{¶ 5} Early the next morning, Walker took her 13-year-old daughter to school. When Walker returned home, Lewis and Smith were still sleeping.  Shortly after her return, Walker saw Gill pull up outside the house in his mother's vehicle.  Walker then heard Gill banging on her front door.

{¶ 6} Walker testified that she had previously told Gill to retrieve a box of his belongings that he had left at the residence.  Walker, however, claimed that she was unaware Gill was planning to come to her residence that morning.  Walker also testified that she suspected Gill knew Smith was at her residence, since Smith posted a message on her Facebook page at 3:00 a.m. and Gill posted the same message on his Facebook page 20 minutes later.

{¶ 7} After Gill started banging on the front door, Walker woke up Smith and told him that her ex-boyfriend, Gill, was outside.  Walker and Smith then walked downstairs, and Walker opened the front door with Smith standing behind her.  After opening the front door, Walker let Gill and his companion, Gibson, inside the residence.  Once Gill and Gibson were inside the residence, Walker showed Gill where his belongings were located.  During this time, Gill and Walker began to argue.  It is undisputed that Smith and Gibson were not initially involved in the argument.

{¶ 8} As Walker argued with Gill, Walker told Gill to take his belongings and leave. Walker and Smith testified that Gill then directed his attention toward Smith.  Walker testified that Gill asked Walker who Smith was, and Smith recalled Gill calling him a

"motherf****r." Trans. Vol. 2 (Apr. 18, 2017), p. 261. Smith and Walker both testified that Smith never threatened or yelled at Gill, but simply told Gill to get his belongings and leave. Thereafter, Walker and Smith testified that Gibson started walking toward Smith and that Walker blocked Gibson's path. Both Walker and Smith claimed that Gibson then pulled out a silver handgun and fired multiple shots in their direction.

{¶ 9} After the shots were fired, Smith and Walker testified that Smith fell to the ground and that Gibson attempted to pistol whip Smith with the gun. Walker testified that she was on top of Gibson trying to get him off of Smith. Smith testified that he was on the ground lying on his back trying to fight off Gibson. During this time, Smith claimed he was able to knock Gibson's gun from his hand.

{¶ 10} After Gibson's gun was knocked from his hand, Walker and Smith heard Gibson tell Gill to get his gun. Smith testified that he then saw Gill grab Gibson's gun. In addition to Gibson's gun, Smith and Walker testified that Gill also had a black and silver handgun, which Gill pressed against Smith's neck while Smith was lying on the ground. Walker claimed that it looked like Gill was trying to shoot Smith, but Gill's gun did not fire. Smith and Walker then testified that Gill grabbed his box of belongings and left the residence with Gibson, who kicked Smith just before leaving.

{¶ 11} After Gill and Gibson left the scene, Smith and Walker realized that Smith had been shot during the altercation. Lewis, who did not testify at trial, called 9-1-1 as Walker tended to Smith. Smith was then taken to the hospital by ambulance and received treatment for a gunshot wound. According to Smith, a bullet went into his left arm, through his chest, and lodged in his spinal cord. As a result of the injury, Smith is permanently paralyzed from the waist down.

**{¶ 12}** Gibson testified in his defense at trial and admitted to carrying a silver .9-millimeter handgun into the Xenia residence and firing multiple shots at Smith. Gibson, however, claimed that he fired the shots in self-defense. In support of this claim, Gibson and Gill testified that the second gun, described as a silver and black .380-millimeter handgun, belonged to Smith, not Gill. Both Gibson and Gill testified that Smith pulled out the .380-millimeter handgun first while Gill and Walker were arguing. In contrast, Walker and Smith testified that Smith never had a gun and never threatened Gibson or Gill.

**{¶ 13}** When describing his version of events at trial, Gibson testified that he entered the residence with Gill, sat on the couch, and "zoned out" while Gill and Walker argued. Trans. Vol. 5 (Apr. 19, 2017), p. 1008. Gibson claimed that he "zoned out" for five minutes until he heard Gill say: "What's you pulling your gun out for, Bro?" *Id*. at 1008-1009. At that point, Gibson claimed he noticed Smith had a silver and black .380-millimeter handgun in his hand.

**{¶ 14}** Continuing, Gibson testified that Smith did not initially point the gun at anyone. However, as a precautionary measure, Gibson testified that he covertly pulled out his .9-millimeter handgun and placed it behind his leg while he was sitting on the couch. Gibson testified that Smith then started to walk toward him and that it looked as if Smith was going to pull up his gun and shoot at him. In response, Gibson testified that he stood up from the couch and started shooting his .9-millimeter handgun at Smith. According to Gibson, he and Smith fired simultaneously at each other.

**{¶ 15}** Once out of ammunition, Gibson testified that he dropped his .9-millimeter handgun, grabbed Smith's .380-millimeter handgun, and swept Smith's legs from under

him, causing Smith to fall on the ground. At that time, Gibson claimed he and Smith began fighting on the ground for possession of the .380-millimeter handgun. Gibson claimed the .380-millimeter handgun came out of both their hands and that Gill picked it up. Gibson testified that he then grabbed his .9-millimeter handgun and put it in Gill's box of belongings. According to Gibson, Gill thereafter put Smith's .380-millimeter handgun in the box as well. Gibson claimed that he and Gill then left the house, and that Gill put the box containing the guns in the trunk of his car before they left the scene.

{¶ 16} Unlike Gibson, Gill testified that Smith pulled out the .380-millimeter handgun as soon as they walked in the house to get his belongings. According to Gill, Smith pointed the .380-millimeter handgun in Gibson's face, and Gill then tried to grab the gun and push it away. Immediately thereafter, Gill testified that he heard multiple gunshots. Gill claimed that he never saw Gibson with a gun and did not see who fired the shots, but assumed it was Smith. Gill testified that Smith's .380-millimeter handgun fell out of his hand while Smith and Gibson were fighting on the ground. Gill claimed that he picked up the .380-millimeter handgun to disarm Smith and placed it in his box of belongings. Gill also claimed that he left the house before Gibson and that he never put a .9-millimeter handgun in the trunk of his car.

{¶ 17} Shortly after leaving the residence, Gibson and Gill were stopped by Xenia police officers while driving northwest on West Ankeney Street. Upon stopping Gill's vehicle, the officers discovered a .9-millimeter unspent bullet in plain view on the passenger seat where Gibson was sitting. After obtaining a search warrant, the officers also discovered Gibson's silver .9-millimeter handgun and the silver and black .380-millimeter handgun in a box located in the trunk of Gill's car. The .380-millimeter

handgun had an unspent round jammed in its chamber.

{¶ 18} The officers also discovered four .9-millimeter shell casings and one .380-millimeter shell casing in the living room of the Xenia residence. In addition, the officers discovered a .45-millimeter unspent bullet in an ashtray belonging to Gill in Walker's upstairs bedroom. The investigating detectives testified that the .45-millimeter bullet was not of interest given that it did not match any of the shell casings in the living room where the shooting occurred. The .45-millimeter bullet was also not of interest to the detectives because it was stuck inside the ashtray, indicating the bullet had been there for some time. Walker also testified that the .45-millimeter bullet was old, as she claimed it was from a box of bullets that she had purchased for Gill when she lived in Dayton. According to Walker, neither she nor Gill ever kept a gun at the Xenia residence.

{¶ 19} Gunshot residue analysis performed on swabs taken from Gibson's and Gill's hands after the shooting established that both Gibson and Gill had gunshot residue on their hands. The expert who performed the gunshot residue analysis testified that the residue on Gill's and Gibson's hands indicated that Gill and Gibson either shot a gun, were in the immediate vicinity of a gunshot, or had touched a gun that had recently been fired.

{¶ 20} DNA testing confirmed that Gibson was the main contributor of DNA on the .9-millimeter handgun. In contrast, a mixed DNA profile was obtained for the .380-millimeter handgun, which excluded Smith, Gibson, and Gill as major DNA contributors. However, the State's DNA expert testified that such a result does not necessarily indicate that Smith, Gibson, or Gill never touched the .380-millimeter handgun.

{¶ 21} The State's DNA expert also testified that the major contributor of DNA on

the .380-millimeter handgun was an individual named Martinez Taylor. According to the DNA expert, Taylor's DNA was in a bank of criminal DNA profiles kept by the Ohio Bureau of Criminal Investigation. Detective Matthew Dray of the Xenia Police Department testified that Taylor was on probation in Montgomery County and could not be located for questioning. Both Smith and Walker testified that they did not know anyone by the name of Martinez Taylor.

{¶ 22} At the close of the State's case, Gibson moved for acquittal pursuant to Crim.R. 29, alleging that the evidence was insufficient. The trial court overruled this motion. The defense then called two witnesses, Gibson and Gill, who testified to a different version of events, as described below. Gibson did not renew his Crim.R. 29 motion at the close of evidence.

{¶ 23} At the close of trial, the parties gave their closing arguments and the trial court provided the jury with its final jury instructions, which included an instruction on self-defense. During deliberations, the jury wrote a note to the trial court asking: "If a person acted in self-defense, but helped contribute to the situation does that delete out the self[-]defense?"

{¶ 24} The trial court provided a written response to the jury's question, which stated: "You must apply the facts as you find them to be[.] As to w[h]ether the defendant has proven by the greater weight of the evidence the affirmative defense of self[-]defense [i]s defined in your instructions beginning on page 7." The trial court's written response also included a notation stating that the response was "approved by all parties."[1]

---

[1] The jury's note and the trial court's response were made part of the record via a May 17, 2018, judgment entry. *See* Judgment Entry (May 17, 2018), Case No. 2017 CR 0067, Docket No. 77.

{¶ 25} Following deliberations, the jury found Gibson guilty as charged. Thereafter, Gibson filed a Crim.R. 33 motion for new trial. In the motion, Gibson claimed his trial counsel had had a post-verdict discussion with some of the jurors that indicated the jurors had incorrectly applied the law of self-defense. According to Gibson, his trial counsel's discussion with the jurors revealed that a majority of the jurors found that Smith pointed a gun at Gibson first and that Gibson fired his gun at Smith in order to defend himself. However, the jurors allegedly told Gibson's counsel that because Gibson carried a gun into the residence, they believed he contributed to the violent situation and thus could not establish a claim of self-defense.

{¶ 26} In light of this information, Gibson argued in his motion for new trial that the jurors incorrectly applied an additional element to the law of self-defense, specifically, that Gibson had to be unarmed to establish self-defense. Gibson also argued that the jurors' mistake was perpetuated by the trial court's response to the jury's question regarding self-defense. According to Gibson, the trial court should have simply responded "no" to the jury's question.

{¶ 27} The trial court overruled Gibson's motion for new trial on grounds that the motion was barred by the aliunde rule and Evid.R. 606(B). The trial court then sentenced Gibson to three years in prison for felonious assault and three years in prison for the firearm specification. The prison terms were ordered to run consecutively for a total prison term of six years.

{¶ 28} Gibson appeals from his conviction, raising three assignments of error for review.

**First Assignment of Error**

**{¶ 29}** Gibson's First Assignment of Error is as follows:

GIBSON'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT

OF THE EVIDENCE AND BASED ON INSUFFICIENT EVIDENCE.

**{¶ 30}** Under his First Assignment of Error, Gibson contends his conviction for felonious assault was not supported by sufficient evidence and was against the manifest weight of the evidence.

**{¶ 31}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

**{¶ 32}** In contrast, "[a] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *Wilson* at ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider

witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

**{¶ 33}** As a preliminary matter, we note that Gibson failed to preserve his insufficiency argument by not renewing it at the close of evidence. *See State v. Goney*, 2d Dist. Greene No. 2017-CA-43, 2018-Ohio-2115, ¶ 71, citing *State v. Zimpfer*, 2d Dist. Montgomery No. 26062, 2014-Ohio-4401, ¶ 42. The record indicates that Gibson moved for acquittal at the close of the State's case-in-chief, the trial court denied the motion, and Gibson then presented the testimony of two defense witnesses. However, after resting, Gibson failed to renew his Crim.R. 29 motion for acquittal. "It is generally accepted in Ohio that if counsel fails to make and renew a Crim.R. 29 motion during a jury trial, the issue of sufficiency is waived on appeal." *Goney* at ¶ 71, citing *State v. Richardson*, 2016-Ohio-8081, 75 N.E.3d 831, ¶ 16 (2d Dist.).

**{¶ 34}** Nevertheless, even if Gibson had renewed his Crim.R. 29 motion, upon review, we find that his argument on appeal is actually confined to a manifest weight claim. This is because Gibson does not claim the State failed to prove an element of felonious assault. Rather, Gibson merely argues the evidence weighs heavily against his conviction because the greater weight of the evidence demonstrated that he acted in self-defense. We disagree.

**{¶ 35}** "Self-defense is an affirmative defense, which means that the burden of

going forward is on the defendant who must prove each element by a preponderance of the evidence." (Citations omitted.) *State v. Kimmell*, 3d Dist. Wyandot No. 16-10-06, 2011-Ohio-660, ¶ 19. *Accord State v. Brown*, 2017-Ohio-7424, 96 N.E.3d 1128, ¶ 23 (2d Dist.) "Affirmative defenses such as self-defense ' "do not seek to negate any elements of the offense which the State is required to prove" but rather they "admit[ ] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability." ' " *State v. Oates,* 2013-Ohio-2609, 993 N.E.2d 846, ¶ 10 (3d Dist.), quoting *State v. Smith*, 3d Dist. Logan No. 8-12-05, 2013-Ohio-746, ¶ 32, quoting *State v. Martin*, 21 Ohio St.3d 91, 94, 488 N.E.2d 166 (1986). *Accord Brown* at ¶ 23.

{¶ 36} "To establish self-defense, a defendant must introduce evidence showing that: (1) he was not at fault in creating the violent situation; (2) he had a bona fide belief that he was in imminent danger of bodily harm; and (3) he did not violate any duty to retreat or avoid the danger." *State v. Thomason*, 2018-Ohio-1228, ___ N.E.3d ___, ¶ 24 (2d Dist.), citing *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). (Other citation omitted.) Therefore, "[t]o support a claim for self-defense, a defendant must demonstrate that he acted out of fear, or he felt that his life was threatened." *State v. Crawford*, 2d Dist. Montgomery No. 22314, 2008-Ohio-4008, ¶ 26.

{¶ 37} In this case, Gibson relies on his and Gill's version of events to support his self-defense claim. Specifically, Gibson contends that during a heated argument between Gill and Walker, Smith pulled out a gun and pointed it at Gibson, which caused Gibson to fear for his life and shoot Smith with his own gun. Gibson therefore claims that Smith created the situation by pulling out a gun first and pointing it at him. Gibson

also claims that he established a bona fide belief he was in imminent danger of bodily harm since he testified to being scared and fearing for his life when Smith pulled out the gun. Finally, Gibson contends that he did not have the ability to retreat from the danger of being shot because everything happened so fast.

{¶ 38} Gibson's testimony, however, indicates that he did have time to retreat, but failed to do so. Specifically, Gibson testified that, before Smith came toward him and pointed a gun at him, he looked up and noticed that Smith was holding a gun "not pointing it at anybody or anything." Trans. Vol. 5 (Apr. 19, 2017), p. 1010. Gibson also testified that Smith was acting strangely while holding the gun and that he (Gibson) was "trying to assess why [Smith] ha[d] his gun out." *Id.* After noticing Smith's gun and Smith's strange behavior, Gibson did not retreat from the situation and attempt to leave the residence. Instead, Gibson testified that he readied himself by covertly pulling out his own gun and placing it behind his leg while he was sitting on the couch. Gibson stated:

> So I see his gun, so I pulled mines out, and I put it behind my leg (indicating) just in case he, you know, tries to shoot [Gill] or try to do—I don't know. Because you know, I've been in situations like this before, and I know when somebody pulls a gun out, somebody's going to get robbed or somebody's going to get shot or something's going to go down. So I pull mines out, and I put it behind my leg (indicating) just in case.

*Id.* at 1010-1011.

{¶ 39} In addition, Gibson's testimony does not clearly indicate whether Smith pointed his gun at Gibson at the time Gibson fired at Smith. Specifically, Gibson testified that Smith "starts walking toward me; but as he's walking toward me, *it looks like he's*

*going to pull, pull his gun up.* So I stand up, and I start shooting, and *I think he shoots at the same time—not really sure—*you know, but, you know, and I shoot until my gun doesn't shoot anymore." (Emphasis added.) *Id.* at 1012-1013. We note that Gill could not testify who put their gun up first, because he claimed that Gibson was in front of him slightly and that he never saw Gibson with a gun.

{¶ 40} Regardless of Gibson and Gill's testimony, Smith and Walker testified to a different version of events indicating that Gibson was at fault in creating the violent situation. As previously noted, Smith and Walker both testified that Smith never had a gun and never spoke to Gibson, but merely told Gill to get his box of belongings and leave. According to Smith and Walker, Gibson fired his weapon at Smith in response to him telling Gill to leave and then attempted to pistol whip Smith after Smith fell to the ground.

{¶ 41} "Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *State v. Adams*, 2d Dist. Greene Nos. 2013 CA 61, 2013 CA 62, 2014-Ohio-3432, ¶ 24, citing *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *Id.*, citing *Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525 at ¶ 14.

{¶ 42} Although Gibson claims that Smith's and Walker's testimony lacked credibility in various respects, and that the jury lost its way in believing it, Gibson's and Gill's testimony had just as many credibility issues. Unlike Smith's and Walker's testimony, which matched fairly consistently throughout trial, Gill's and Gibson's

testimony deviated in multiple ways.  First, Gill claimed that Gibson was standing next to him when Smith pulled out a gun and pointed it at Gibson's face and that Gill grabbed Smith's gun in order to push it out of Gibson's face.  Gibson, on the other hand, testified that he was sitting on the couch when Smith pointed his gun at him and made no reference to Gill pushing Smith's gun out of his face.

{¶ 43} Gill also testified that Smith pulled out his gun as soon as they entered the house, while Gibson claimed he sat on the couch and "zoned out" for five minutes while Gill and Walker argued before Smith pulled out his gun.  Gill further testified that he never recalled seeing Gibson with a gun, yet Gibson testified that he had the .9-millimeter handgun on him at all relevant times, pulled his gun out to shoot Smith, and put it in Gill's box of belongings before Gill placed the box in the trunk of his car.

{¶ 44} Given the multiple credibility issues with Gibson's and Gill's testimony, we do not find the jury lost its way in choosing to believe Walker's and Smith's version of events.  Furthermore, even if the jury had accepted Gibson's and Gill's testimony, Gibson's testimony indicated that he could have retreated from the situation and was possibly premature in firing at Smith, who, according to Gibson, merely looked like he was going to pull his gun up.  Therefore, based on the facts and circumstances of this case, the jury did not create a manifest miscarriage of justice in failing to find that Gibson acted in self-defense.  Accordingly, we do not find that Gibson's conviction for felonious assault was against the manifest weight of the evidence.

{¶ 45} Gibson's First Assignment of Error is overruled.

**Second Assignment of Error**

{¶ 46} Gibson's Second Assignment of Error is as follows:

THE TRIAL COURT COMMITTED PLAIN ERROR WHEN RESPONDING

TO THE JURY'S WRITTEN QUESTION ABOUT SELF-DEFENSE.

{¶ 47} Under his Second Assignment of Error, Gibson challenges the trial court's response to the jury's question: "If a person acted in self-defense, but helped contribute to the situation does that delete out the self[-]defense?" Although Gibson concedes that he did not object to the trial court's response and waived all but plain error for appeal, Gibson nevertheless contends that it was plain error for the trial court to respond to the jury's question by directing the jurors to the written jury instruction on self-defense as opposed to directly answering "no" to the question. We disagree.

{¶ 48} To demonstrate plain error, it must be shown that "but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, citing *State v. Davis*, 127 Ohio St.3d 268, 2010-Ohio-5706, 939 N.E.2d 147, ¶ 29. "The burden of demonstrating plain error is on the party asserting it." *Id.*, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 49} In support of his plain error argument, Gibson contends that his trial counsel's post-verdict discussion with some of the jurors indicated that the jury would have found he acted in self-defense had the trial court answered the jury's question in the negative, as opposed to directing the jury to the written jury instruction on self-defense. As previously noted, the jurors allegedly told Gibson's trial counsel that a majority of the jurors believed Gibson fired shots at Smith in self-defense after Smith pointed a gun at

Gibson, but mistakenly believed that Gibson's sole act of bringing a gun inside Walker's residence prevented him from succeeding on a self-defense claim.

**{¶ 50}** Gibson's argument lacks merit for multiple reasons. First, Gibson's argument hinges on his trial counsel's unsubstantiated, post-verdict discussion with some of the jurors, which is not part of the record and cannot not be considered on appeal. *State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus ("[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter").

**{¶ 51}** Even if this court could consider trial counsel's purported discussion with the jurors, we do not find that the trial court's response to the jury's question about self-defense amounted to a plain or obvious error. As previously noted, the trial court responded to the jury's question by referring the jurors back to its original jury instruction on self-defense. Reiterating jury instructions that are not misleading and which correctly state the law does not, without more, constitute reversible error. *See State v. Kirin*, 11th Dist. Trumbull No. 99-T-0054, 2000 WL 1140261, *4 (Aug. 11, 2000) (the trial court's reliance on the written jury instructions when responding to the jury's question was not in error where there was no contention that the instructions misapplied the law or were misleading); *State v. Holmes*, 6th Dist. Lucas No. L-08-1034, 2009-Ohio-6255, ¶ 27 (the neutral reiteration of jury instructions does not constitute reversible error); *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995) (no reversible error where the trial court refused to instruct the jury beyond the instructions given and defendant failed to object).

**{¶ 52}** The trial court's written jury instruction on self-defense stated, in relevant part, as follows:

The defendant claims to have acted in self-defense. To establish a claim of self-defense the defendant must prove by the greater weight of the evidence that he was not at fault in creating the situation giving rise to the injury to Gregory Smith; and he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm, and that his only reasonable means of retreat from such danger was by the use of deadly force; and he had not violated any duty to retreat to avoid the danger.

Court's Exhibit No. 1 (Apr. 20, 2017), Docket No. 36, p. 7.

{¶ 53} Gibson does not argue and we do not find that the self-defense jury instruction given by the trial court was misleading or an incorrect statement of law. Gibson has therefore failed to establish that a plain or obvious error occurred when the trial court responded to the jury's question. This is particularly true here considering the record indicates that Gibson approved of the trial court's response to the jury's question. Therefore, because the trial court did not err in answering the jury's question as it did, Gibson's plain error argument lacks merit.

{¶ 54} Gibson's Second Assignment of Error is overruled.


### Third Assignment of Error

{¶ 55} Gibson's Third Assignment of Error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING GIBSON'S MOTION FOR NEW TRIAL AND TO SET ASIDE THE VERDICT.

{¶ 56} Under his Third Assignment of Error, Gibson claims the trial court erred in

failing to grant his Crim.R. 33 motion for new trial. In support of this claim, Gibson contends the jury's guilty verdict was not sustained by sufficient evidence and that an error of law that occurred at trial when the trial court responded to the jury's question about self-defense. We again disagree.

{¶ 57} "A trial court's decision on a Crim.R. 33 motion for a new trial will not be reversed absent an abuse of discretion." *State v. Gillispie*, 2d Dist. Montgomery No. 24456, 2012-Ohio-1656, ¶ 31, citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus. (Other citation omitted.) "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 58} Crim.R. 33(A)(4) provides that a new trial may be granted if the verdict is not sustained by sufficient evidence or is contrary to law. Gibson did not raise this claim in his motion for new trial; therefore, he is barred from raising for the first time on appeal. *See State v. Schneider*, 2d Dist. Greene No. 95-CA-18, 1995 WL 737910, *1 (Dec. 13, 1995), citing *State v. Coleman*, 37 Ohio St.3d 286, 294, 525 N.E.2d 792 (1988) ("[i]t is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this court and will not be addressed").

{¶ 59} Crim.R. 33(A)(5) provides that a new trial may be granted on motion of the defendant for any error of law occurring at trial. Gibson claims an error of law occurred at trial when the trial court responded to the jury's question about self-defense, claiming the trial court should have answered "no" to the jury's question as opposed to directing the jury to the written jury instructions. As previously noted, although Gibson approved

the trial court's response before it was delivered to the jury, Gibson now claims the trial court's response caused the jury to improperly apply the law of self-defense and bases this claim on his trial counsel's post-verdict discussion with the jurors.

**{¶ 60}** In rejecting Gibson's claim, the trial court found that Gibson's Crim.R 33 motion was barred by the aliunde rule and Evid.R. 606(B). "[T]he aliunde rule provides: 'that the verdict of a jury may not be impeached by the statement of a member of a jury unless there is evidence aliunde, i.e., from some other source, to impeach the verdict.' " *State v. Kellum,* 2d Dist. Miami No. 81 CA 47, 1982 WL 3795, *8 (Sept. 10, 1982), quoting *State v. Adams*, 141 Ohio St. 423, 427, 48 N.E.2d 861 (1943).

**{¶ 61}** The aliunde rule is codified in Evid.R. 606(B), which provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror

would be precluded from testifying will not be received for these purposes.

{¶ 62} As noted by the Supreme Court of Ohio, "[t]he first sentence of Evid.R. 606(B) embodies the common-law tradition of protecting and preserving the integrity of jury deliberations by declaring jurors generally incompetent to testify as to any matter directly pertinent to, and purely internal to, the emotional or mental processes of the jury's deliberations." *Schiebel*, 55 Ohio St.3d at 75, 564 N.E.2d 54. "The rule is designed to protect the finality of verdicts and to ensure that jurors are insulated from harassment by defeated parties." (Citation omitted.) *Id.*

{¶ 63} This court has explained that "Evid. R. 606(B) contains three basic parts: (1) the rule excludes inquiry into juror thought process or related statements or the reasoning leading to a juror's conclusions, (2) the rule precludes juror testimony (or affidavit) in the absence of some outside evidence (the actual aliunde part of the rule), and (3) the rule permits juror evidence of threats, bribes, or officer-of-the-court misconduct without limitation[.]" *State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 29 (2d Dist.).

{¶ 64} In this case, Gibson based his motion for new trial on unsubstantiated statements by jurors that allegedly indicated the trial court's response to the jury's question on self-defense caused the jurors to misapply the law of self-defense. In other words, Gibson is relying on alleged juror statements to show how the trial court's response affected the jurors' thought process and reasoning during deliberations. This is clearly prohibited by Evid.R. 606(B).

{¶ 65} Under Evid.R. 606(B), jurors are "generally incompetent to testify about the jury's internal deliberations related to the verdict." *State v. Fricke*, 2d Dist. Montgomery

No. 26126, 2016-Ohio-2747, ¶ 54, citing *Schiebel*, 55 Ohio St.3d at 75, 564 N.E.2d 54. Likewise, an attorney's testimony or affidavit that attributes statements to jurors is incompetent and may not be received for purposes of impeaching the verdict or for laying a foundation of evidence aliunde. *State v. Brown*, 2d Dist. Montgomery No. 17891, 2000 WL 966161, *7 (July 14, 2000), citing *Tasin v. SIFCO Industries, Inc.*, 50 Ohio St.3d 102, 553 N.E.2d 257 (1990). As a result, any statement by the jurors or Gibson's trial counsel regarding the jury's deliberations was prohibited by Evid.R. 606(B) and could not serve as a mechanism for setting aside the jury's guilty verdict in this case or ordering a new trial. Therefore, the trial court did not abuse its discretion in overruling Gibson's motion for new trial.

{¶ 66} Gibson's Third Assignment of Error is overruled.

**Conclusion**

{¶ 67} Having overruled all three assignments of error raised by Gibson, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Nathaniel R. Luken
Lucas W. Wilder
Hon. Stephen Wolaver